STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey D. WALLI, Defendant-Appellant.†
[Case No. 2010AP1256-CR]

CITY OF SHEBOYGAN, Plaintiff-Respondent,

v.

Jeffrey D. WALLI, Defendant-Appellant.†
[Case No. 2010AP1257]

Court of Appeals

*Submitted on briefs March 16, 2011.—Decided May 11, 2011.*

2011 WI App 86

(Also reported in 799 N.W.2d 898.)

† Petition for Review denied 9/27/11.

404

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Chad A. Lanning* of *Lanning Law Offices, LLC*, West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *J.B. Van Hollen*, attorney general; *Joseph DeCecco*, district attorney, and *Christopher W. Stock*, assistant district attorney, Sheboygan; and *Charles C. Adams*, assistant city attorney, Sheboygan.

Before Neubauer, P.J., Anderson and Reilly, JJ.

¶ 1. ANDERSON, J. Jeffrey D. Walli appeals from a conviction for first offense operating a motor vehicle while intoxicated and resisting an officer. This case presents the opportunity to decide that we will apply the "clearly erroneous" standard of review to factual findings made from a combination of live testimony and evidence preserved on a video recording. Because the trial court's finding that Walli crossed the center line is

based on testimony of the arresting officer and video from a squad car camera is not clearly erroneous, we affirm his convictions.

¶ 2. Walli was charged in the trial court with one count of resisting an officer in violation of WIS. STAT. § 946.41(1) (2009–10),[1] and he was charged in municipal court with one count of operating a motor vehicle while intoxicated and one count of first offense operating with a prohibited blood alcohol content both in violation of CITY OF SHEBOYGAN, WIS., MUNICIPAL CODE § 118–1 (2003).[2] Walli filed a motion to suppress, contending that there was a lack of reasonable suspicion to support the investigative stop that led to his arrest.

¶ 3. At the suppression hearing, City of Sheboygan Police Officer Brandon Munnik testified that he was on patrol at 11:22 p.m., traveling westbound, when a vehicle coming from the other direction crossed the center line and nearly sideswiped his squad car, startling him. Munnik turned around and activated his emergency lights, which also activated the video camera mounted in his squad car. Once activated, the camera records all events beginning thirty seconds before the lights were activated. Munnik stopped the vehicle and identified the driver as Walli and, in due course, attempted to arrest him for drunk driving. Walli resisted the officer and had to be forcibly taken to the ground and tasered before he could be placed in handcuffs.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] The cases were consolidated in the trial court after Walli filed a jury trial demand in the Sheboygan/Kohler municipal court. The chief judge of the court of appeals converted this from an appeal decided by one judge to a three-judge panel by order dated October 28, 2010. *See* WIS. STAT. RULE 809.41(3).

¶ 4. Munnik also provided foundation testimony to support the introduction of a video recording from his squad car's camera and then the recording was played for the trial court. He described the video as a "fair and accurate representation" of what he had observed. The prosecutor argued, "Judge, in looking at the video I can certainly see there's a dashed line, I can see the vehicle is on the center line, and I think that's a traffic violation." Defense counsel disputed this argument, "I think [the video] shows two vehicles coming toward each other, um, both on their side of the center line, they're both close to the center line, and that there is no showing of Mr. Walli's vehicle crossing the center line." Defense counsel also pointed out that the video did not show the officer taking any evasive action. He commented that the officer testified that Walli startled him and advanced the hypothesis that Munnik's attention was distracted just before Walli passed him. The trial court denied the motion to suppress, holding:

> Well in looking at that, obviously we did look at it several times and we can see certainly throughout the time the defendant's vehicle was very close to the centerline, but I believe at one point where I saw it was where the dashed line was there and just as he's coming with one of those dashed lines there's the crossing of and over that particular area.

> And at this point, um, I will would have to deny the motion. I believe at this point that the officer did see the vehicle cross the centerline, and that that's a violation of the motor vehicle code, and would give reasonable suspicion to stop, so the Court would deny the motion.

¶ 5. Walli entered a no contest plea to the count of resisting an officer and was found guilty. After a court trial, he was also found guilty of first offense operating a motor vehicle while intoxicated. He now appeals the trial court's denial of his motion to suppress.

¶ 6. On appeal, Walli insists that "the video recording does not depict a traffic violation occurring. Moreover, the officer did not testify that the stop was based upon a totality of circumstances that led him to suspect that Mr. Walli was impaired or otherwise in need of community caretaker help."

¶ 7. Investigative traffic stops are subject to the constitutional reasonableness requirement. *State v. Post*, 2007 WI 60, ¶ 12, 301 Wis. 2d 1, 733 N.W.2d 634. The question we must answer is whether the State has shown that there were "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion of the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The burden of establishing that an investigative stop is reasonable falls on the State. *Post*, 301 Wis. 2d 1, ¶ 12. The determination of reasonableness is a commonsense test. *Id.*, ¶ 13.

¶ 8. The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime. *Id.* This commonsense approach balances the interests of the State in detecting, preventing, and investigating crime and the rights of individuals to be free from unreasonable intrusions. *Id.* The reasonableness of a stop is determined based on the totality of the facts and circumstances. *Id.*

¶ 9. The law of reasonable suspicion and investigative stops was summarized in *State v. Washington*, 2005 WI App 123, ¶ 16, 284 Wis. 2d 456, 700 N.W.2d 305:

Thus, the standard for a valid investigatory stop is less than that for an arrest; an investigatory stop requires only "reasonable suspicion." The reasonable suspicion standard requires the officer to have " 'a particularized and objective basis' for suspecting the person stopped of criminal activity[,]"; reasonable suspicion cannot be based merely on an "inchoate and unparticularized suspicion or 'hunch[,]' " When determining if the standard of reasonable suspicion was met, those facts known to the officer at the time of the stop must be taken together with any rational inferences, and considered under the totality of the circumstances. Stated otherwise, to justify an investigatory stop, "[t]he police must have a reasonable suspicion, grounded in specific articulable facts and reasonable inferences from those facts, that an individual is [or was] violating the law." However, an officer is not required to rule out the possibility of innocent behavior before initiating a brief investigatory stop. (Citations omitted.)

██ ██

¶ 10. Whether reasonable suspicion exists is a question of constitutional fact. *State v. Powers*, 2004 WI App 143, ¶ 6, 275 Wis. 2d 456, 685 N.W.2d 869. When reviewing questions of constitutional fact, we apply a two-step standard of review. *Id.* First, we will uphold a trial court's findings of historical fact unless they are clearly erroneous. *Id.* Second, based on the historical facts, we review de novo whether a reasonable suspicion justified the stop. *Id.*

¶ 11. Because the first step in this analysis requires us to review the trial court's findings of historical facts and, in this case, those findings are based in part on a video recording of the event, this court, sua sponte, issued an order converting this appeal from a one-judge appeal to a three-judge appeal and requested the attorney general to file a supplemental brief on the appro-

priate standard of review.[3] With the near ubiquitousness[4] of squad car video cameras, surveillance cameras and traffic cameras, appellate courts will be deciding more and more cases where some of the evidence is preserved on recordings.

¶ 12. In a supplementary brief, the State urges us to use the clearly erroneous standard of review when reviewing a video recording. First, it points out that WIS. STAT. § 805.17(2) provides, "In all actions tried upon the facts without a jury . . . . [The trial court's] [f]indings of fact shall not be set aside unless clearly erroneous." Second, the State reminds us that the Wisconsin Constitution limits our jurisdiction to appellate jurisdiction, blocking our ability to engage in fact finding. Third, it collects decisions from other states that use the clearly erroneous standard of review when considering recorded evidence.

¶ 13. In his initial brief, Walli advocated for the clearly erroneous standard of review, citing to *State v. Popke*, 2009 WI 37, ¶ 20, 317 Wis. 2d 118, 765 N.W.2d 569. He abandons that argument in his supplemental

---

[3] The Wisconsin State Public Defender and the Wisconsin Association of Criminal Defense Lawyers declined our invitation to file briefs on the issue of the standard of review when disputed events are recorded on a video.

[4] "The power and capabilities of cameras will continually increase, while their cost and size will decrease. It is reasonable to assume that covert visual surveillance will eventually be ubiquitous in some environments. David Banisar and Simon Davies, *Video Surveillance*, Privacy Law and Policy Reporter (2000), http://kirra.austlii.edu.au/au/journals/PLPR/2000/48.html (last visited May 3, 2011); A. Michael Froomkin, *The Death of Privacy?*, 52 STAN. L. REV. 1461, 1475 (May 2000) (Unless social, legal, or technical forces intervene, it is conceivable that there will be no place on earth where an ordinary person will be able to avoid surveillance.).

brief and now contends that the "documentary evidence exception" to the clearly erroneous standard of review should be applied to our review of the video recording. We disagree.

■■■

¶ 14. Here, whether Walli crossed the center line was disputed. While the officer testified that the video was a fair and accurate representation, he also testified that he witnessed Walli crossing the center line. The parties disagreed as to what the video in fact showed. Where the underlying facts are in dispute, the trial court resolves that dispute by exercising its fact-finding function, and its findings are subject to the clearly erroneous standard of review. *See Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶ 38, 319 Wis. 2d 1, 768 N.W.2d 615. As the supreme court has explained:

> The court of appeals is by the Constitution limited to appellate jurisdiction. Art. VII, sec. 5(3), WIS. CONST. This precludes it from making any factual determinations where the evidence is in dispute. This is a power reserved to trial courts or to the supreme court under appropriate procedures in the exercise of its constitutional grant of original jurisdiction. The court of appeals has, of course, additional constitutional jurisdiction in respect to its supervisory authority over actions and proceedings in the trial court. This grant of jurisdiction does not confer the right to make findings of fact where the evidence is controverted.

*Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980). The constitutional limitations on our jurisdiction are acknowledged in WIS. STAT. § 805.17(2), which provides, in part:

> In all actions tried upon the facts without a jury the court shall find the ultimate facts . . . . Findings of fact

shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Here, the trial court's ruling involved not simply the review of the video, the court also evaluated the credibility of the officer and weighed all of the evidence.

¶ 15. In surveying decisions from other states, we find those applying the clearly erroneous standard of review to similar circumstances to be more convincing than those that adopt the de novo standard of review suggested by Walli. For example, in *Meadows v. State,* 65 P.3d 33, 37 (Wyo. 2003), the appellant urged the Wyoming Supreme Court to use the de novo standard of review because the "credibility of [the] Trooper is not directly at issue through such a review." He suggested that if the videotape conflicts with the trooper's testimony or any of the trial court's findings, then the court should " 'independently assess the weight and credibility that should be given to each' piece of evidence." *Id.* The *Meadows* court rejected the appellant's argument and his reliance on *State v. Binette,* 33 S.W.3d 215 (Tenn. 2000), a case Walli also relies upon:[5]

> In *Binette,* the review was de novo because the arresting officer did not testify at trial; however, there was a videotape of the incident. The Tennessee Supreme Court held that when a court's findings of fact at a suppression hearing are based solely on evidence that does not involve issues of credibility, such as a videotape, the rationale underlying a deferential standard of

[5] Because *State v. Binette,* 33 S.W.3d 215 (Tenn. 2000), is factually distinguishable from this case—Munnik's testimony of what he observed accompanies the video recording—we reject Walli's reliance on that decision. We leave for another day the scenario in *Binette* where the video recording is the only evidence of the alleged criminal conduct.

review is not implicated. Thus, a de novo standard of review was found to be appropriate; however, this holding was expressly limited to the facts presented.

*Meadows*, 65 P.3d at 37 (citation omitted).

¶ 16. In a case from Georgia challenging the reasonable suspicion for a traffic stop, the trial court rejected much of the arresting officer's testimony because it found it to be contradicted by the squad car video recording. *See State v. Mohammed*, 695 S.E.2d 721, 722–23 (Ga. Ct. App. 2010). The Georgia Court of Appeals first repeated its standard of review, "We must defer to the trial court's determination on the credibility of witnesses; and while we review de novo the trial court's application of the law to undisputed facts, we must accept the trial court's ruling on disputed facts unless it is clearly erroneous." *Id.* at 722. It then rejected the State's suggestion that a de novo standard of review be employed.

> The [S]tate claims that the police officer's testimony was substantiated by his patrol car video and that we should therefore review the trial court's findings de novo instead of applying the "clearly erroneous" standard. However, the de novo standard is applied in this context only "[t]o the extent that the controlling facts . . . are undisputed because they are plainly discernible from the . . . video recording." Here, neither the speed of the vehicles nor the distance between them is plainly discernable on the video. While the video is consistent with the police officer's claim that Mohammed was following the lead car more closely than was reasonable and prudent under the conditions, it was also consistent with the theory accepted by the trial court that Mohammed was merely trying to maintain a safe speed while following a car that failed to maintain a constant rate of travel.

413

*Id.* at 723 (footnotes omitted).

¶ 17. We therefore decide that when evidence in the record consists of disputed testimony and a video recording, we will apply the clearly erroneous standard of review when we are reviewing the trial court's findings of fact based on that recording.

¶ 18. In conference, we viewed the video recording from Munnik's squad car and conclude that the trial court's finding that Walli crossed the center line is not clearly erroneous.

*By the Court.*—Judgment affirmed.