COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10
and RULE 809.62.

Appeal No. **2018AP1190**

Cir. Ct. Nos. **2017TR7464**
**2017TR8288**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

DENISE R. CAMPBELL,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dunn County: MICHAEL A. SCHUMACHER, Judge. *Reversed and cause remanded for further proceedings*.

¶1 SEIDL, J.[1] The State appeals an order dismissing Denise Campbell's citations for first-offense operating a motor vehicle while intoxicated

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

(OWI) and operating a motor vehicle with a prohibited blood alcohol concentration (PAC). The State argues the court erred in concluding that the law enforcement officer who stopped Campbell's vehicle lacked reasonable suspicion to justify an investigative stop. We agree with the State. We therefore reverse the circuit court's dismissal of Campbell's citations and remand the matter for further proceedings.

## BACKGROUND

¶2     Dunn County Sheriff's Sergeant Travis Mayer initiated a traffic stop of Campbell's vehicle and cited her for OWI and ultimately for PAC. Campbell moved to dismiss her citations "for lack of probable cause." At the hearing on Campbell's motion to dismiss, the circuit court clarified that Campbell was, in fact, asserting that Mayer lacked reasonable suspicion to stop her vehicle. Mayer was the only witness to testify at the hearing, and the following relevant facts are from his testimony.

¶3     Mayer is a sixteen-year sheriff's department veteran. He worked primarily in the field during that time and has been involved in "numerous" OWI arrests. At 9:17 p.m. on the day of Campbell's arrest, Mayer was traveling westbound on United States Highway 12 heading toward another incident. Two vehicles approached him in the eastbound lane. Campbell was driving the second vehicle. Mayer observed the following as Campbell approached:

> I noticed that the headlights canted[2] towards my vehicle
> and started drifting towards the centerline, enough that it

---

[2] "Cant" means "to set at an angle" or "to pitch to one side." *Cant*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).

2

made me nervous that this vehicle was going to come across the centerline. So I went toward the shoulder.

In reviewing the camera, it's hard to view that because [Campbell's vehicle] comes closest to me after it's past the camera angle of [my] vehicle.

¶4     Mayer immediately turned around to pursue Campbell. As he was getting closer to Campbell's vehicle, he noticed it "drifting back and forth within [her] lane of travel; and ultimately when [she] meets another vehicle, [she] drifts toward [it] coming right to the centerline[,] where the wheels touched the centerline."

¶5     Campbell then turned onto 850th Street, a road that does not have any centerline traffic markings. As Campbell was turning, her vehicle "appeared to be shaking back and forth." In Mayer's experience, a vehicle shaking back and forth is abnormal and may be indicative of an intoxicated driver or a domestic dispute or fight occurring within the vehicle. Once on 850th Street, Campbell crossed "what would be the center of the road." Mayer then initiated a traffic stop.

¶6     During Mayer's testimony, the State entered into evidence the video from Mayer's squad car and played the video for the circuit court. Mayer testified that the video was a true and accurate copy of his squad car video.[3]

¶7     The circuit court granted Campbell's motion to dismiss. The court explained that the "crucial question" it must decide is "whether the facts would warrant a reasonable police officer[,] in light of [his or her] training and

---

[3] The video is included in the record on appeal and was reviewed by this court. We may review video evidence in the record in determining whether a circuit court's findings of fact are clearly erroneous. *See* **State v. Walli**, 2011 WI App 86, ¶¶17-18, 334 Wis. 2d 402, 799 N.W.2d 898.

3

experience[,] to suspect that the individual was committing, has committed, or is about to commit a crime or a traffic violation," citing ***State v. Post***, 2007 WI 60, 301 Wis. 2d 1, 733 N.W.2d 634. The court stated that it was basing its decision only upon the evidence presented at the hearing—i.e., Mayer's testimony and his squad car video.

¶8    The circuit court first discussed Mayer's observation that Campbell's vehicle was canted toward him as she approached in the opposite lane. The court found that Mayer had a "nervous" "feeling that he needed to go to the right to avoid the possibility of [Campbell's] vehicle coming at him" and that "[t]here was not testimony that [Campbell's vehicle] did cross the centerline." The court then recounted that Mayer observed Campbell drifting within her own lane of travel and that "there may have been a time where the vehicle touched the centerline." It also noted that the incident occurred at 9:17 p.m.

¶9    The circuit court discussed "the abrupt jerking movement" of Campbell's vehicle that Mayer also observed.[4] The court stated it could not tell from the squad car video that the shaking movements occurred, but also that it did not "disbelieve … [Mayer] in terms of him observing something like that." The court additionally found that Campbell's turn onto 850th Street "appeared to be proper."

---

[4] Mayer initially described Campbell's vehicle as "shaking back and forth." The circuit court later described Mayer's observation as him seeing "abrupt jerking." In their briefs, both parties describe Campbell's vehicle as "shaking," "jerking," or "rocking." We refer to Campbell's vehicle as "shaking" throughout our opinion for consistency's sake.

¶10 The circuit court rendered its decision, the relevant portion of which is as follows:

> [B]ased upon all of the evidence, the totality of the circumstances here today, I'm going to grant the motion to dismiss ….
>
> I think Sergeant Mayer did really good police work in making observations that led him to conclude that something's going on here, and he took it upon himself to do what he thought was necessary, I think, to avoid the possibility of accidents [and] somebody else getting hurt.
>
> ….
>
> I'm glad the stop happened. I'm glad that there was nothing more that happened as a result of that, but I think it's also important to indicate that there was no testimony about inconsistent speeds. There was no testimony about speeding itself. There was no fleeing or something like that.
>
> ….
>
> [I]n these days, one of the things that I wonder about [when] … I'm driving on county highways, and I see people … weave[,] [s]ome might say drift … I'm thinking almost always when I see that, somebody's on their cellphone.
>
> [A]gain, I think that [Mayer] made his call, and I have no quarrel with that, but I think the burden has not been met by the State by a preponderance of the evidence.

The State now appeals.

## DISCUSSION

¶11 The sole issue on appeal is whether Mayer had reasonable suspicion to stop Campbell. Whether a traffic stop is reasonable is a question of constitutional fact. *Post*, 301 Wis. 2d 1, ¶8. A question of constitutional fact is a mixed question of law and fact to which we apply a two-step standard of review.

5

*Id.* We will uphold the circuit court's factual findings unless they are clearly erroneous. *Id.* Further, if evidence in the record consists of disputed testimony and a video recording, we apply the same clearly erroneous standard of review when reviewing the circuit court's findings of fact based on that recording. *See State v. Walli*, 2011 WI App 86, ¶17, 334 Wis. 2d 402, 799 N.W.2d 898. However, we independently review whether the facts fail to meet constitutional standards. *Id.* It is the State's burden to show a traffic stop complied with constitutional standards. *See State v. Nesbit*, 2017 WI App 58, ¶6, 378 Wis. 2d 65, 902 N.W.2d 266.

¶12 An investigatory traffic stop requires an officer to have, at a minimum, reasonable suspicion that a wrongful act has been committed, is being committed, or is about to be committed. *See State v. Young*, 2006 WI 98, ¶20, 294 Wis. 2d 1, 717 N.W.2d 729. Reasonable suspicion is a low standard. *State v. Eason*, 2001 WI 98, ¶19, 245 Wis. 2d 206, 629 N.W.2d 625. A defendant's driving "need not be erratic, unsafe, or illegal to give rise to reasonable suspicion." *Post*, 301 Wis. 2d 1, ¶24. An officer must be able to point to "specific and articulable facts" that wrongful activity might be afoot, and he or she may draw upon reasonable inferences from those facts in light of his or her training and experience to justify the stop. *Id.*, ¶10. The decision to initiate a traffic stop cannot rest on an officer's inchoate suspicion or hunch that wrongful activity is afoot. *Id.* But, an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that wrongful activity might be afoot. *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125. The determination of reasonableness is a common-sense test that is based on the totality of the facts and circumstances. *Post*, 301 Wis. 2d 1, ¶13.

¶13    The State argues the circuit court erred when it concluded that the totality of Mayer's observations was insufficient to meet the reasonable suspicion standard, even though the court appeared to have accepted Mayer's testimony as true.  We agree.

¶14    Mayer had reasonable suspicion to stop Campbell based on the totality of the facts and circumstances available to him at the time of the stop.  *See id.*  Campbell initially veered so close to Highway 12's centerline that Mayer felt compelled to steer away from her to avoid a collision.  After turning around to follow her, Mayer then observed Campbell weaving within her own lane of travel such that she "may have" driven on its marked centerline.  Campbell continued weaving within her own lane of travel after she turned onto 850th Street.  850th Street has no marked centerline, but Campbell deviated left of the center of the road on at least one occasion.  Additionally, Campbell's vehicle displayed unusual sudden shaking, which, based upon Mayer's experience, provided evidence of intoxication or otherwise distracted driving.  While the abovementioned facts, if viewed in isolation, might be insufficient to create a reasonable suspicion, the totality of the specific and articulable facts observed by Mayer reasonably permitted him to believe that Campbell was engaging in wrongful conduct—namely, operating her vehicle while intoxicated.  *See id.*, ¶37.

¶15    Campbell's arguments to the contrary are unpersuasive because they largely fail to assess the stop under the totality of the facts and circumstances as found by the circuit court.[5]  Specifically, she considers in isolation Mayer's

---

[5] Campbell's response brief refers to the State as the "Appellant" and Campbell as the "Respondent" throughout its argument section.  We remind Campbell's counsel that appellate briefs' argument sections must reference the parties by name, rather than by party designation.  *See* WIS. STAT. RULE 809.19(1)(i), (3)(a)2.

observations that her vehicle had been: (1) canted toward him in her own lane of travel such that he needed to veer to avoid a collision with her; and (2) abruptly shaking. Campbell appears to dispute that those facts actually occurred, which we construe as a challenge to the court's factual findings. She also argues that both facts are not indicative of her having been engaging in wrongful conduct.[6]

¶16     We observe first that Campbell's arguments fail to recognize the circuit court found credible Mayer's testimony, even though it ultimately determined he lacked reasonable suspicion to stop her. When the court acts as the finder of fact, it is the "ultimate arbiter" of witness credibility. *See* ***State v. Anker***, 2014 WI App 107, ¶10, 357 Wis. 2d 565, 855 N.W.2d 483. It accepted Mayer's observation that Campbell's vehicle was "heading toward his vehicle" such that he believed he had to veer right to avoid a collision. The court stated that although it could not see on the squad car video Campbell's vehicle abruptly shaking prior to turning onto 850th Street, it did not "disbelieve" Mayer that the shaking had actually occurred. The totality of the court's comments demonstrates that it accepted as true Mayer's testimony and found him a credible witness.

¶17     We are not persuaded that the circuit court's findings regarding Campbell's vehicle being canted in its own lane of travel and her vehicle shaking

---

[6] Additionally, Campbell asserts that the State, for the first time on appeal, argues Mayer had an independent basis for stopping her because he could have cited her for driving left of center, in violation of WIS. STAT. § 346.05. Campbell argues that we should not consider the State's argument because we do not consider issues raised for the first time on appeal. Notably, the State submitted no reply brief in this case. Although an officer may conduct a traffic stop when he or she has reasonable suspicion to believe a traffic violation has occurred, ***State v. Houghton***, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143, we conclude Mayer had reasonable suspicion to stop Campbell without relying on whether he could have stopped and cited her for driving left of center. Therefore, this issue is immaterial to our decision, and we decline to address it further.

are clearly erroneous. As to Campbell's vehicle being canted in its own lane of travel, Campbell asserts that Mayer's squad car video "fails to show" that her vehicle was about to cross Highway 12's centerline and that "the circuit court correctly stated … that Sergeant Mayer's *feeling* was in fact, only a feeling, and does not have enough weight to help form the basis for reasonable suspicion." As proof, she contends that the vehicle immediately in front of Mayer did not veer to the right when Campbell passed that vehicle.

¶18 We disagree with Campbell's assertions. Mayer testified that Campbell's vehicle was "closest" to him "after it's past the camera angle of the vehicle." Consequently, it was established that Mayer's squad car video did not capture all of the relevant period in which Campbell's vehicle approached Mayer's car. Further, the actions of another vehicle in Mayer's lane of travel are largely irrelevant in assessing the positioning of Campbell's vehicle. Moreover, the circuit court found credible Mayer's testimony and considered his observation and reaction in assessing whether he had reasonable suspicion to stop Campbell. She has not shown how the court's finding that her vehicle was canted in its own lane of travel was clearly erroneous. *See Post*, 301 Wis. 2d 1, ¶8.

¶19 In regard to her vehicle shaking, Campbell argues the circuit court was unable to observe the shaking when it viewed the squad car video. While true, the court nonetheless stated that it "d[id]n't disbelieve" that Mayer observed Campbell's vehicle shaking. Given this comment by the court and its favorable credibility determination of Mayer, we determine the court did in fact find that Campbell's vehicle had been shaking and that finding is not clearly erroneous. *See Walli*, 334 Wis. 2d 402, ¶17.

¶20 We also disagree with Campbell that Mayer unreasonably inferred that Campbell was engaged in wrongful behavior by relying upon both her vehicle canting toward him and its abrupt shaking movements. Reasonable suspicion is a common-sense test that permits Mayer to draw upon reasonable inferences in light of his training and experience. *See Post*, 301 Wis. 2d 1, ¶13. Campbell's driving "need not be erratic, unsafe, or illegal to give rise to reasonable suspicion." *See id.*, ¶24. Further, Mayer is not required to draw a reasonable inference that favors innocence. *See Nieves*, 304 Wis. 2d 182, ¶14. Mayer, a sixteen-year police veteran experienced with OWI drivers, observed Campbell's vehicle canted toward him and approach so close to Highway 12's centerline such that he needed to veer to the right when Campbell's vehicle passed him in order to avoid a potential collision. Additionally, Mayer later observed Campbell's vehicle touch Highway 12's centerline and then cross the center of 850th Street. Mayer also explained that, in his experience, a vehicle shaking back and forth is abnormal and may be indicative of an intoxicated driver or a domestic dispute or fight occurring within the vehicle. Importantly, we cannot view these facts in isolation. *Post*, 301 Wis. 2d 1, ¶¶27, 37.[7]

¶21 Considering these facts in light of the other facts and circumstances surrounding the stop, Mayer reasonably inferred that Campbell was engaging in

---

[7] We recognize the circuit court opined that Campbell's wayward driving may have been caused by her use of a cellphone while driving, instead of her driving while intoxicated. However, as we have previously observed, reasonable suspicion does not require Mayer to rule out "innocent" driving behavior when there is also a competing inference of wrongful conduct. *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125. Thus, whether Campbell's suspect driving was due to cellphone use is immaterial to Mayer's reasonable suspicion calculus.

wrongful behavior. *See id.*, ¶37. We therefore reverse the circuit court's order dismissing Campbell's citations and remand the matter for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.