**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 9, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP640-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2017CF214**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ASHLEY L. MONN,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Barron County: J. MICHAEL BITNEY, Judge. *Reversed and cause remanded with directions*.

¶1 HRUZ, J.[1] Ashley Monn appeals a judgment of conviction, entered upon her guilty plea, to misdemeanor possession of amphetamine in violation of WIS. STAT. § 961.41(3g)(d). Monn argues the circuit court erred by denying her

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

motions to suppress evidence obtained after law enforcement officers executed an outstanding arrest warrant at the residence of the individual subject to the warrant, a residence at which Monn was staying for the evening.

¶2     There are multiple searches and seizures that occurred in this case implicating the Fourth Amendment.  At least two of these violated Monn's constitutional rights.  Specifically, assuming that the officers' initial seizure of Monn was lawful, we agree that her seizure lasted longer than was necessary to effectuate its purposes, making its continuation unreasonable and, therefore, unlawful.  We also agree with Monn that the consent she gave to the officers to search her purse was constitutionally invalid because she was unlawfully seized at the time she consented to that search.  We therefore reverse Monn's judgment of conviction, and we remand the matter with directions for the circuit court to grant her first-filed suppression motion.

## BACKGROUND

¶3     The material facts are undisputed.  In the early morning of May 7, 2017, Monn was staying overnight at the trailer home of Joseph Perzichilli.[2] Perzichilli had an outstanding arrest warrant.  Perzichilli resided in a trailer owned by Dean Sellent, who allowed Perzichilli to stay in the trailer in exchange for work that he did for Sellent.  There is no dispute that the trailer is Perzichilli's home for Fourth Amendment purposes.

---

[2] There are inconsistencies between Monn, the State, and the circuit court's written decision regarding whether Perzichilli's arrest warrant was executed on the morning of May 6 or 7.  While May 7 appears to be the correct date based upon our review of the appellate record, the precise date is of no moment; the material facts here are that Monn was inside Perzichilli's trailer during the early morning when law enforcement officers entered his residence to execute the outstanding warrant for his arrest.

¶4     Barron County Sheriff's Department deputies had been dispatched to a different residence near Perzichilli's home because they believed another individual with an outstanding warrant was at that location. After speaking to an individual at that residence, the law enforcement officers learned that Perzichilli "might be" staying nearby in the trailer described above. The officers then confirmed the existence of the active arrest warrant on Perzichilli and attempted to make contact with him.

¶5     The officers knocked loudly on the trailer door for five minutes, but no one answered. They did not observe any movement inside the trailer, although the officers observed smoke coming from the trailer's stove pipe and heard several dogs barking inside. Additionally, the officers saw two vehicles parked in front of the trailer, neither of which was registered to Perzichilli.

¶6     Just before 3:00 a.m., the officers again knocked on the trailer door and announced their presence. This time, the officers forcibly opened the door and ordered anyone inside to immediately exit. Perzichilli and Monn exited the trailer and were promptly handcuffed. Monn informed the officers as she exited the trailer that no one else was inside. Some officers did a protective search of the trailer, while others began questioning Perzichilli and Monn outside of it.

¶7     In total, Monn was questioned for approximately ten minutes. Officers had confirmed approximately four minutes after Monn exited the trailer that she had no outstanding arrest warrants. Perzichilli was transferred to a squad car at some point between six and fourteen minutes after he and Monn had exited the trailer.

¶8     Deputy Darren Hodek would later testify that he and other officers agreed that Monn would be released because "there would be no charges against

her." At approximately 3:16 a.m., an officer told Monn, "Let me shut the [trailer] door, and we'll get you out of here." Monn was still handcuffed at that time.

¶9    Before Monn could leave, she asked the officers if she could retrieve her purse, shoes and cellphone from inside the trailer. An officer told her that he would retrieve her belongings, and he then did so. When the officer returned, he asked Monn whether the purse had any weapons inside. Monn replied that it did not. Approximately fifteen minutes after Monn had initially been detained, the officer then asked if he could search inside the purse "for anything that might be dangerous or illegal inside it." Monn "agreed … and volunteered that [the officer] would likely find a dope pipe inside it."[3]

¶10    The officers located the pipe and also discovered in the purse a container with white residue on its inside, which was later identified as residue from methamphetamine. Monn was arrested and charged with one count of methamphetamine possession and one count of possession of drug paraphernalia.

¶11    On August 30, 2017, Monn filed her first motion to suppress her statements to the officers and the evidence found within her purse. The circuit court held a hearing on her motion, at which Monn argued that the consent she gave the officers to search her purse was invalid because she was being seized unlawfully at the time she consented to the search.

_____

[3] Monn contends the appellate record is unclear as to precisely when she volunteered the information about the pipe. Here, we rely on the circuit court's factual finding from its written decision because she does not argue the court's finding is clearly erroneous. We acknowledge, however, that there is some ambiguity regarding this factual finding, particularly when comparing this written finding to the court's statement at the first suppression hearing summarizing the deputies' testimony to this fact as follows: "So they then searched the purse and found the pipe and she offered that it was a meth pipe …." In all events, the precise timing of Monn's statement about the pipe is immaterial to the issues we resolve in this appeal.

4

¶12    Following supplemental briefing from both parties, the circuit court entered a written decision denying Monn's suppression motion. The court concluded "Monn was not in custody or otherwise illegally seized or detained." It found that "[h]er detention was temporary and lasted no more than 15 minutes." The court determined that the detention

> cannot be said, under the totality of these circumstances, to be an unlawful or prolonged seizure which was coercive in its nature or duration. There were no extenuating circumstances that would lead one to believe that Ms. Monn's ability to give free and voluntary consent was overcome by the actions of the officers present at the scene.
>
> The Court concludes the State has proven by clear, satisfactory and convincing evidence that Ms. Monn's consent to search her purse was freely and voluntarily given.

Monn filed a motion to reconsider, which the court denied.

¶13    Monn filed a second suppression motion, this time arguing that the officers' initial entry into the trailer was unlawful and, therefore, the evidence found in her purse and her statements must be suppressed under the fruit of the poisonous tree doctrine. The circuit court held a hearing on Monn's motion. The court agreed with Monn that "the officers may have technically entered the residence unlawfully or in violation of the constitutional rights of Mr. Perzichilli," but the court denied her motion nonetheless. It concluded the evidence that Monn wanted suppressed was sufficiently attenuated from the unlawful entry. Specifically, the court determined:

> I don't think there's enough of a nexus between that and the ultimate consent that resulted in the obtaining of the incriminating evidence here that justifies the Court saying that this is a proper case where the statements that were given or the items that were found should be suppressed under the fruit of the poisonous tree analysis. Because I don't think that the officers' conduct here can be

reasonably and fairly argued to be so egregious that anything that happened after that, despite her consent, which I've already found, should nonetheless be overturned or suppressed or somehow outweighed the fact that for all other intents and purposes, this was consent that I found was freely given and resulted in the ultimate arrest of Ms. Monn for the possession of the methamphetamine and paraphernalia in this case.

¶14    Monn then pleaded guilty to an amended count of amphetamine possession, and the paraphernalia possession count was dismissed and read in at sentencing.    Monn now appeals her judgment of conviction, arguing that the circuit court erred by denying her suppression motions.[4]

## DISCUSSION

¶15    When reviewing the denial of a motion to suppress evidence, we uphold the circuit court's findings of fact unless they are clearly erroneous.  **State v. Pinkard**, 2010 WI 81, ¶12, 327 Wis. 2d 346, 785 N.W.2d 592.  However, the application of constitutional principles to those facts presents a question of law that we review de novo.  **Id.**

¶16    The Fourth Amendment protects individuals from unreasonable searches and seizures.  **Id.**, ¶¶12-13.  Evidence obtained as a result of a Fourth Amendment violation generally must be suppressed.[5]  *See **State v. Felix**, 2012 WI 36, ¶30, 339 Wis. 2d 670, 811 N.W.2d 775.  Here, Monn asserts there were, at a

---

[4] A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding a defendant's guilty plea.  *See* WIS. STAT. § 971.31(10).

[5] The State makes no argument that the exclusionary rule should not be applied even if the evidence here was obtained unlawfully.  *See **State v. Felix**, 2012 WI 36, ¶30, 339 Wis. 2d 670, 811 N.W.2d 775.

minimum, four unlawful searches or seizures requiring the suppression of her statements to the officers and the evidence found inside her purse: (1) the officers' initial entry into Perzichilli's home; (2) Monn's initial detention when the officers executed the arrest warrant at Perzichilli's home; (3) Monn's continued detention, including after Perzichilli was apprehended; and (4) the officers' search of her purse.

¶17 We pause to recognize that the overall duration of Monn's seizure was not the focus of the parties or the circuit court during the litigation of Monn's suppression motions below. While she did raise the issue in her first motion, the main issues the parties contested were whether Monn's initial seizure was lawful and whether her consent was freely and voluntarily given. Indeed, the parties litigated extensively whether an arrest warrant provides the same categorical authority as a search warrant for officers to temporarily detain other individuals on the premises, who are not the subject of the arrest warrant, without reasonable suspicion or probable cause. *See Michigan v. Summers*, 452 U.S. 692, 705 & n.20 (1981) (creating the categorical rule for search warrants to detain the occupants of a premises while a search for contraband is conducted). The circuit court here concluded that the same rationale underlying the categorical rule regarding search warrants for contraband in *Summers* "applies with equal force during the execution of an arrest warrant."[6]

---

[6] This issue appears to be one of first impression in Wisconsin. Notably, the State on appeal does not justify Monn's initial seizure under either *Michigan v. Summers*, 452 U.S. 692 (1981), or a different case suggesting the existence of a categorical rule that allows the detention of all occupants of a premises during the execution of an arrest warrant.

¶18    Although the issue regarding the duration of Monn's seizure was not fully vetted below, the record is sufficiently developed for us to analyze this issue, and the parties briefed the issue on appeal.  As previously noted, the material facts here are not in dispute.  The circuit court made some factual findings regarding this issue, and it received into the record and viewed three body camera videos.  We reviewed the videos to aid in our understanding of the circumstances surrounding Monn's seizure.  *Cf.* ***State v. Walli***, 2011 WI App 86, ¶14, 334 Wis. 2d 402, 799 N.W.2d 898 (permitting this court to review video in the appellate record, particularly in circumstances where the material facts are not in dispute).

¶19    Accordingly, for purposes of this opinion, we assume the officers' entry into Perzichilli's home and the initial detention of Monn during that execution of Perzichilli's outstanding arrest warrant were reasonable and lawful.  What remains, then, is whether Monn's continued detention after Perzichilli was taken into custody remained lawful such that Monn provided valid consent to the search of her purse.  To determine the validity of Monn's consent, we must first determine whether the State has proven that she was seized lawfully at the time she provided it.

*I.  The Seizure of Monn*

¶20    The officers initially detained Monn because she was present in Perzichilli's home when they executed the outstanding warrant for his arrest.  There is no dispute that this detention was a seizure under the Fourth Amendment and that Monn was seized at the time she consented to the search of her purse.  Monn asserts that, assuming the Fourth Amendment permitted the officers to seize

8

her initially, her detention eventually became unlawful because the level of restraint the officers imposed and the duration of her seizure were unreasonable.

¶21 A temporary investigative detention is a seizure under the Fourth Amendment.[7] *See State v. Pickens*, 2010 WI App 5, ¶¶26-27, 323 Wis. 2d 226, 779 N.W.2d 1 (2009). This type of seizure must be limited in scope and executed through the least intrusive means. *See Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion). Thus, a temporary detention that might be lawful at its inception can become unlawful if it lasts "longer than is necessary" to effectuate its purpose. *Id.* We examine the totality of the circumstances to determine whether a seizure complied with constitutional standards. *Pickens*, 323 Wis. 2d 226, ¶27.

¶22 In assessing the totality of the circumstances, "[t]he use of handcuffs or other restrictive measures does not necessarily render a temporary detention unreasonable." *Id.*, ¶32. However, "such measures generally are reasonable only when particular facts justify the measure for officer safety or similar concerns," and courts have recognized that the use of handcuffs substantially increases the intrusiveness of an investigative detention. *Id.*, ¶¶30, 32. Ultimately, the State bears the burden of proving that a temporary detention was reasonable under the Fourth Amendment. *Id.*, ¶14.

---

[7] The law recognizes three types of police-citizen encounters: (1) consensual encounters, which do not implicate the Fourth Amendment, *Florida v. Bostick*, 501 U.S. 429, 434 (1991); (2) investigative detentions, which are Fourth Amendment seizures limited in scope and duration and which must be supported by reasonable suspicion of criminal activity, *Terry v. Ohio*, 392 U.S. 1, 30 (1968); and (3) arrests, which must be supported by probable cause, *Hayes v. Florida*, 470 U.S. 811, 815-16 (1985).

¶23     We agree with Monn that her continued detention after the officers successfully apprehended Perzichilli became unlawful—or, at a minimum, that the State has failed its burden of proving otherwise.  The purposes for detaining Monn were to facilitate Perzichilli's arrest on his outstanding warrant, which was accomplished in short order, and to ensure officer safety.   Perzichilli was immediately arrested after he and Monn both walked out of the trailer at the officers' orders, and Monn told officers that no one else was inside the home, which they then confirmed during their protective sweep.

¶24     Additionally, the officers confirmed that Monn had no outstanding warrants approximately four minutes after she exited the trailer, well before the officers retrieved Monn's possessions.  *See Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (holding that a warrant check is an ordinary inquiry attendant to the purpose of most temporary seizures).  Finally, we see no facts indicating the need for Monn's continued detention and restraint because of legitimate officer safety concerns—the officers accomplished their mission of apprehending Perzichilli and promptly secured the premises and the individuals who were present.  Thus, under the totality of the circumstances here, Monn's seizure should have ended prior to when she consented to the search of her purse because the officers had already completed the purposes of her seizure, along with its attendant ordinary inquiries.  And, as explained below, the fact that the detention continued unlawfully for only a matter of minutes does not make it any less unreasonable and unlawful.[8]  *See id.* at 354-55, 357.

---

[8] We agree with the circuit court's observation that the officers' conduct in obtaining Monn's consent was neither overtly coercive nor egregious.  Yet, a seizure can become unlawful without such motives if the seizure is unreasonably prolonged.

10

¶25 The State offers no specific, articulable facts that justify the officers handcuffing Monn and, more importantly, detaining her for over fifteen minutes before the search of her purse occurred. In particular, Monn remained seized after the officers had: (1) arrested the subject of the arrest warrant; (2) completed a protective sweep of the trailer and otherwise secured the scene; (3) and determined Monn had no outstanding warrants. And Monn still remained seized after the officers admitted they had no further reason to detain her.

¶26 The State's arguments relate primarily to the propriety of the officers' actions—and the attendant officers' safety concerns—in not allowing Monn to retrieve her possessions and in asking to search her purse. In other words, the State's arguments in response ignore the circumstances after the initial detention and prior to the retrieval of Monn's purse. We fail to see how these arguments demonstrate the reasonableness of the duration of, and level of restraint used with, Monn's seizure. The State fails to account for why she continued to be seized, including by pointing to any specific circumstances that would justify continued concerns about officer safety. Additionally, the State largely fails to explain why the entirety of the approximately fifteen-minute seizure of Monn was necessary to effectuate its purpose.

¶27 The State also argues that Monn's detention was reasonable because she was only "detained for approximately 10 minutes"[9] and because "[a]lthough

---

[9] As Monn observes in her reply brief, a more accurate duration of her detention is closer to approximately fifteen minutes—a factual finding the circuit court made. This accounts for the time Monn was detained after leaving the trailer to when the officers told her that they would "get [her] out of here." The officers retrieved her purse soon after that statement. For these reasons, we state that Monn's detention lasted approximately fifteen minutes throughout our opinion.

11

she was in handcuffs, she was clearly told that she was going to be free to leave." We are not persuaded by the State's argument in this regard.

¶28 Again, it is the State that carries the burden of proving that Monn's warrantless seizure was reasonable, including in terms of its duration. *See Pickens*, 323 Wis. 2d 226, ¶14. The State merely labeling the length of her detention as "brief" and noting that her seizure would be ending at some unspecified time is insufficient to meet the State's burden of proof. "The reasonableness requirement of the Fourth Amendment requires no less when the police action is a seizure permitted on less than probable cause because of legitimate law enforcement interests. The scope of the detention must be carefully tailored to its underlying justification." *Royer*, 460 U.S. at 500. Absent the reasonable suspicion ordinarily demanded to justify detaining an individual, even a brief prolongment of a seizure past the point at which it should have reasonably concluded is not tolerated by the Fourth Amendment. *See Rodriguez*, 575 U.S. at 354-55, 357. Monn's constitutional rights are no less important during a brief unlawful detention than a prolonged unlawful detention.

## II. The Search of Monn's Purse

¶29 Monn next argues that the consent she gave the officers to search her purse was invalid because that consent was given while she was being unlawfully seized. We agree.

¶30 Consent is an established exception to the Fourth Amendment's requirements of probable cause and the issuance of a warrant prior to a search of protected areas by law enforcement. *See State v. Floyd*, 2017 WI 78, ¶29, 377 Wis. 2d 394, 898 N.W.2d 560. Consent is constitutionally valid if it is freely and voluntarily given. *Id.*, ¶30. The State bears the burden of establishing by clear

and convincing evidence that a person's consent to a search was free and voluntary. *Id.* A search authorized by consent is invalid, however, if that consent was given while a person was illegally seized. *Id.*, ¶31.

¶31 Monn's consent was given while she was still being seized by the officers in conjunction with their execution of Perzichilli's arrest warrant. Neither party argues on appeal that Monn's seizure ended prior to her asking the officers to retrieve her purse,[10] agreeing to the search of her purse, or volunteering the fact that the officers would find a pipe inside the purse. We therefore conclude Monn's consent was invalid because that consent occurred while she was seized unlawfully. *See id.*

¶32 The State argues Monn's consent was freely and voluntarily given under the totality of the circumstances, based on multiple nonexclusive factors as set forth by *State v. Artic*, 2010 WI 83, 327 Wis. 2d 392, 786 N.W.2d 430, and *State v. Phillips*, 218 Wis. 2d 180, 577 N.W.2d 794 (1998). Those cases are not controlling here, however, because neither case involved the issue of whether the defendant was lawfully seized at the time consent was given.

¶33 Finally, the State, in a three-sentence argument at the end of its response brief, contends the officers had probable cause to search Monn's purse, her consent notwithstanding, because she "volunteered that she had a 'dope pipe'

---

[10] Monn contends the record is unclear as to whether she asked the officers to retrieve her possessions from the trailer. However, in its written decision, the circuit court made the following finding: "The defendant then asked the officers if she could retrieve her belongings from inside the [trailer.] The officers said that for safety reasons that she would not be allowed to do that, but that they would get those for her, and she agreed to the same." To the extent that Monn intends to argue the court's finding in this regard is clearly erroneous, we disagree. In all events, whether Monn asked the officers to retrieve her possessions from the trailer is immaterial to our analysis.

in her purse even before any search of it took place." The State's argument is entirely undeveloped, and we therefore need not address it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶34 Even so, this argument is of questionable merit. There appears to be an issue of fact unresolved by the circuit court as to precisely when Monn offered this information. *See supra*, ¶9 n.3. Moreover, we have determined that Monn was being seized unlawfully, and that the seizure did not terminate, by the time she volunteered this information. The State's undeveloped argument is therefore insufficient to meet its burden of proving the warrantless search of Monn's purse was lawful. *See State v. Payano-Roman*, 2006 WI 47, ¶30, 290 Wis. 2d 380, 714 N.W.2d 548.

## CONCLUSION

¶35 We conclude that the officers' search of Monn's purse was unlawful because the consent she provided was constitutionally invalid. It was invalid because at the time Monn provided her consent, she was being seized unlawfully. Monn's seizure was unlawful because, assuming without deciding that it was lawful at its inception, her seizure lasted longer than was necessary to effectuate its purposes. Because Monn's constitutional rights were violated, her statements to the officers during her unlawful seizure and the evidence found inside her purse should be suppressed. We therefore reverse Monn's judgment of conviction, and the matter is remanded with directions to grant Monn's August 30, 2017 motion to suppress evidence.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.