# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1908-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CF508**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

ANTHONY FRANCEN HARRIS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Brown County: WILLIAM M. ATKINSON, Judge. *Affirmed*.

¶1     SEIDL, J.[1]  Anthony Harris appeals a judgment of conviction for possession of tetrahydrocannabinol (THC) as a repeater and for third-offense operating a motor vehicle while intoxicated (OWI).  Harris challenges the denial

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

of his motion to suppress evidence obtained by law enforcement after it stopped his vehicle, arguing that the arresting officer did not have reasonable suspicion to initiate the stop. We disagree and affirm the judgment.[2]

## BACKGROUND

¶2 On March 30, 2018, at approximately 2:26 a.m., patrol officer Dan Skenandore of the Green Bay Police Department was riding with his field training officer, Jeremy Bilskey, when they observed a black sport utility vehicle traveling westbound in the left lane on Lombardi Avenue in Green Bay, Wisconsin. Skenandore stated that he observed the vehicle cross the center line of Lombardi Avenue and then weave within its lane. Skenandore then ran the vehicle's registration through his squad car's mobile data terminal (MDT) and determined that the registered owner did not have a valid driver's license.

¶3 Skenandore attempted to initiate a traffic stop by turning on his emergency lights; however, the vehicle continued west on Lombardi Avenue and after signaling, traveled into the left turn lane, and turned southbound onto Marlee Lane before coming to a complete stop in that lane. Skenandore stated that he approached the driver's door and told the driver, later identified as Anthony Harris, that the registered owner of the vehicle did not have a valid driver's license. Harris responded by repeating what Skenandore just told him. Skenandore stated that Harris exhibited slurred speech and had glossy eyes, and that he could smell the odor of intoxicants coming from the vehicle. Skenandore then asked Harris if he would submit to standardized field sobriety tests, and

---

[2] An order denying a motion to suppress evidence may be reviewed on appeal notwithstanding a no-contest or guilty plea. WIS. STAT. § 971.31(10).

Harris said that he would not. Skenandore had Harris step out of the vehicle, asked whether he had any weapons on him, and asked permission to pat Harris down, but Harris refused. Skenandore then placed Harris under arrest for OWI and asked if Harris would submit to a preliminary breath test, which Harris also refused. While searching Harris incident to the arrest, Skenandore found a baggie in Harris's pocket containing a green leafy substance that smelled like marijuana, as well as a scale with the same substance on it located inside the vehicle.

¶4    Harris was charged with possession of THC, as a second and subsequent offense, third-offense OWI, third-offense operating with a prohibited alcohol concentration (PAC), and possession of drug paraphernalia, all as a repeater. Harris filed a suppression motion, and a hearing was subsequently held.

¶5    At the motion hearing, Skenandore initially explained that he was in phase four of the department's field training program which Skenandore explained as a "shadow" phase in which he did one hundred percent of the workload, with his field training officer merely riding along and observing. Skenandore then testified that it was Harris's driving behavior that caught his attention. Specifically, he testified that the vehicle "crossed the center line and then began weaving within its lane." Skenandore explained that the "center line" was the dotted line dividing the two westbound lanes of Lombardi Avenue. Skenandore testified that both the front and rear passenger side tires crossed over the center line, into the right westbound lane, before moving back into the left westbound lane.

¶6    When asked if his squad car's dashboard camera captured the crossing, Skenandore explained that it did not because the camera kicks in when the officer activates the emergency lights and then it only records the previous

3

thirty seconds leading up to the activation of the lights. He stated that Harris's vehicle crossed the center line more than thirty seconds before he activated the emergency lights.

¶7    The evidence showed that Harris did have a valid driver's license at the time his vehicle was stopped. Skenandore explained that while he was following Harris's vehicle, he originally ran its license plate through his squad car's MDT and it showed that the registered owner did not have a valid driver's license. He explained that when he runs a registration check the information from earlier checks remains on the MDT screen, and a few lines of new "data come up, and you have to select and then start scrolling through the different lines of data to grab the information that you need." It was only after the traffic stop and Harris's arrest that Skenandore realized he had mistakenly looked at data from an earlier MDT registration check on a previously run plate. Skenandore further testified that he would have initiated a stop based on the driving behavior alone, regardless of the registration check issue.

¶8    The circuit court reviewed the relevant portions of the dashboard camera video and then denied Harris's motion. The court found that when Skenandore initiated the stop of Harris's vehicle, his mistake in reading the MDT information was made in good faith and Skenandore believed that the registered owner of the vehicle did not have a valid driver's license. The court found that despite the mistake, Skenandore had a reasonable basis to stop Harris's vehicle due to his observation of Harris's driving behavior prior to the stop and particularly his crossing over the center line between the westbound lanes. The court specifically found Skenandore's testimony to be credible because "he's got the field training cop there" observing him, and the court also found that the thirty seconds of video captured prior to the activation of emergency lights supported

4

Skenandore's testimony about Harris's vehicle weaving within its lane and driving on the center line. The court also noted that reasonable suspicion for the traffic stop was further supported by the time of night and the fact that the stop took place in the "football district area," which contains many taverns.

¶9 Pursuant to a plea agreement, Harris pled no contest to possession of THC and third-offense OWI and was convicted of those offenses. The third-offense PAC charge was dismissed, and the possession of drug paraphernalia charge was dismissed and read in at sentencing. Harris now appeals.

## DISCUSSION

¶10 Whether a traffic stop is reasonable is a question of constitutional fact to which we apply a two-step standard of review. *State v. Post*, 2007 WI 60, ¶8, 301 Wis. 2d 1, 733 N.W.2d 634. We review the circuit court's findings of historical fact under the clearly erroneous standard, and we review independently the application of those facts to the constitutional principles. *Id.*

¶11 An investigatory traffic stop is justified by reasonable suspicion of criminal activity. *State v. Walli*, 2011 WI App 86, ¶9, 334 Wis. 2d 402, 799 N.W.2d 898. To determine whether such reasonable suspicion exists, we examine the totality of the circumstances surrounding the stop. *Id.*, ¶8. The fundamental focus of the reasonable suspicion requirement in a traffic stop is reasonableness. *State v. Anderson*, 155 Wis. 2d 77, 83, 454 N.W.2d 763 (1990). The reasonableness of the officer's action must be viewed "in light of his or her training and experience." *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). In order to demonstrate reasonable suspicion, the officer must be able to point to specific and articulable facts which, taken together with rational

inferences from those facts, reasonably warrant the intrusion of the stop. *Post*, 301 Wis. 2d 1, ¶10.

¶12    The totality of the circumstances supports the circuit court's finding of reasonable suspicion to stop Harris's vehicle. The record reveals that it was late at night, Harris was in an area where there were numerous taverns, and Harris's driving was erratic, with his vehicle repeatedly deviating from Harris's lane of traffic and crossing the center line. Time of day is a legitimate factor in formulating a reasonable suspicion of impairment. *See State v. Anagnos,* 2012 WI 64, ¶58, 341 Wis. 2d 576, 815 N.W.2d 675. Taken together, these specific and articulable facts gave rise to reasonable suspicion justifying Skenandore's further investigation as to whether Harris was driving while intoxicated.

¶13    Harris argues that Skenandore's mistaken belief that the registered owner of the vehicle did not have a valid driver's license could not constitute an objectively reasonable mistake of fact providing a basis for Skenandore's stop of Harris's vehicle. In doing so, Harris ignores the circuit court's finding that Skenandore acted in good faith, which is supported by the record. Skenandore was engaged in multiple tasks at the time, including driving a squad car, observing Harris's driving behavior, entering a license plate number into the MDT, and trying to read the results. Further, the court was aware that Skenandore was engaged in field training at the time, indicating that he was not an experienced field officer. Skenandore's mistake under these facts cannot be said to be unreasonable or indicative of any bad faith.

¶14    Harris also argues that he did not cross the center line. Here, Harris again ignores the circuit court's finding that Skenandore's testimony was credible. Witness credibility is within the province of the fact finder. *See Johnson v.*

*Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980). Moreover, weaving can be one of the factors supporting reasonable suspicion for a traffic stop. *Post*, 301 Wis. 2d 1, ¶¶26-28. The court also noted that reasonable suspicion for the traffic stop was further supported by the time of night and the fact that the stop took place in an area containing many taverns. Based upon the totality of the circumstances, we conclude the court properly denied Harris's suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.