**2021 WI App 29**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2018AP1764-CR

† Petition for Review Filed

Complete Title of Case:

**STATE OF WISCONSIN,**

**PLAINTIFF-RESPONDENT,**

**V.**

**KIMBERLY DALE CRONE,**

**†DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | April 20, 2021 |
| Submitted on Briefs: | September 29, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | Stark, P.J. |
| Dissented: | |

Appellant
ATTORNEYS: On behalf of the defendant-appellant, the cause was submitted on the briefs of *Susan E. Alesia*, assistant state public defender of Madison.

Respondent
ATTORNEYS: On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *John A. Blimling*, assistant attorney general.

**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 20, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP1764-CR**

Cir. Ct. No.  2017CM207

STATE OF WISCONSIN

IN COURT OF APPEALS

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KIMBERLY DALE CRONE,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Sawyer County: JOHN M. YACKEL, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Kimberly Crone appeals a judgment of conviction, entered upon her no-contest plea, for possession of a controlled substance.[1] She argues the circuit court erred by denying her motion to suppress evidence that a law enforcement officer obtained during a traffic stop, after she consented to a search of her purse. Crone contends the officer's request to look at two pill bottles in her purse—which were in plain view of the officer standing next to her vehicle— unlawfully extended the stop, violating her Fourth Amendment rights. We disagree, as the officer's simple request for Crone's consent—even when that request occurred at the end of the traffic stop—did not unreasonably extend the stop under the totality of the circumstances. Therefore, we affirm.

## BACKGROUND

¶2 Around 9:00 a.m., Sawyer County sheriff's deputy Jay Poplin stopped Crone because she was driving eleven miles per hour over the speed limit. Poplin approached Crone's vehicle and then asked for her driver's license and proof of insurance. As she was "digging" through her purse for her proof of insurance, Poplin observed two orange pill bottles inside her purse. He could only see the pill bottles and their caps, such that he was unsure if either of the bottles had labels on them. Poplin then returned to his squad car and confirmed that Crone had a valid driver's license.

---

[1] By our June 24, 2020 order, we held this appeal in abeyance pending our supreme court's decision in *State v. Brown*, 2020 WI 63, 392 Wis. 2d 454, 945 N.W.2d 584.

Additionally, this appeal was converted from a one-judge appeal to a three-judge appeal by the July 15, 2020 order of the Chief Judge of the Court of Appeals. *See* WIS. STAT. § 752.31(3) (2019-20); WIS. STAT. RULE 809.41(3) (2019-20). That order also directed the attorney general to file a supplemental respondent's brief in this case, which he did and to which Crone filed an additional reply brief. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

¶3      Poplin returned to Crone's vehicle and gave back her driver's license. As he did so, Poplin asked Crone if he could see the two pill bottles.  She agreed. The first pill bottle Crone handed to Poplin had a valid prescription label with her name on it for gabapentin.  The second pill bottle had no label on it and contained various types of pills.  Poplin identified some of the pills at the scene as gabapentin and ibuprofen.  He returned those pills to Crone, which left two other types of pills that Poplin could not identify.

¶4      Poplin then asked Crone if she had prescriptions for those pills.  Crone initially replied that she did.  After Poplin gave her his business card so that she could later provide him proof of the prescriptions, however, Crone admitted that she did not have prescriptions for them.  Poplin seized the remaining pills and allowed Crone to leave.

¶5      Poplin returned to the sheriff's department and identified some of the pills he seized as lorazepam, a schedule IV controlled substance.  Crone was charged with one count of possession of a controlled substance without a valid prescription, contrary to WIS. STAT. § 961.41(3g)(b).  She subsequently filed a motion to suppress the evidence Poplin obtained on the grounds that his inspection of the two pill bottles constituted an unlawful extension of the traffic stop.  Poplin testified at the hearing on Crone's suppression motion.

¶6      Poplin testified that although he had "completed the reason" for the traffic stop when he asked Crone for the two pill bottles, he had already decided he "was going to start a drug investigation and look further into the pill bottles" based on his initial contact with her.  Poplin admitted that he never told Crone that she was free to leave.  When asked whether Poplin had "any particular reason to think that there wasn't a prescription prior to looking at the bottles," he replied, "Just based

3

on prior law enforcement training and experience I have found illegal substances in pill bottles."

¶7    The circuit court denied Crone's suppression motion.  The court found Poplin's request to inspect the two pill bottles "was of a very minimal intrusion" and "did not … require a tremendous amount of additional time."  The court therefore concluded there "was a valid expansion under these very limited circumstances as to how [Poplin] approached it and how [Crone] responded."  Crone pleaded no contest to the possession of a controlled substance count, and she now appeals.[2]

### DISCUSSION

¶8    Whether evidence should be suppressed is a question of constitutional fact.  *State v. Wright*, 2019 WI 45, ¶22, 386 Wis. 2d 495, 926 N.W.2d 157.  When presented with a question of constitutional fact, this court engages in a two-part inquiry.  *Id.*  First, we review the circuit court's findings of historical fact under the clearly erroneous standard.  *Id.*  Second, we independently apply constitutional principles to these historical facts.  *Id.*

¶9    The United States and Wisconsin Constitutions both protect the rights of individuals to be free from unreasonable searches and seizures, and we normally interpret article I, section 11 of the Wisconsin Constitution coextensively with the Supreme Court's interpretation of the Fourth Amendment.  *State v. Floyd*, 2017 WI 78, ¶19, 377 Wis. 2d 394, 898 N.W.2d 560.  A traffic stop is a form of seizure

_____

[2] A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding a defendant's no-contest plea.  *See* WIS. STAT. § 971.31(10).

4

entitled to Fourth Amendment protections. *Id.*, ¶20. Crone, however, does not challenge the lawfulness of her initial traffic stop.

¶10 Rather, Crone argues the traffic stop was unlawfully prolonged. A traffic stop can become unlawful if it is prolonged beyond the time reasonably required to effectuate its purpose. *See id.*, ¶21. After a stop is made, an officer may expand the scope of inquiry only to investigate "additional suspicious factors" that come to the officer's attention. *State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124. "An expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion." *Id.*

¶11 The State rightfully concedes on appeal that Poplin did not have reasonable suspicion to lawfully expand the traffic stop and inquire into whether Crone legally possessed the contents of the two pill bottles. Poplin's observation of pill bottles in Crone's possession—especially with him being unable to see if there were labels on the bottles—does not give rise to a reasonable suspicion that Crone illegally possessed a controlled substance. Consequently, the lawfulness of the traffic stop turns on whether it lasted longer than was necessary to reasonably effectuate its original purpose. *See Wright*, 386 Wis. 2d 495, ¶¶23-24.

¶12 Our supreme court and the United States Supreme Court have both recently spoken on this topic, and we are bound by their holdings. *See State v. Jennings*, 2002 WI 44, ¶18, 252 Wis. 2d 228, 647 N.W.2d 142; *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). These cases establish that the "tolerable duration" of a traffic stop is determined by its "'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Wright*, 386 Wis. 2d 495, ¶23 & n.19 (quoting *Rodriguez v. United States*, 575 U.S. 348,

5

354 (2015)). A traffic stop's mission includes: "(1) addressing the traffic violation that warranted the stop; (2) conducting ordinary inquiries incident to the stop; and (3) taking negligibly burdensome precautions to ensure officer safety." *Id.*, ¶24. When those tasks are completed, or reasonably should have been completed, the lawful authority for a traffic stop ends. *Id.*

¶13    The Supreme Court has recognized, however, that "the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention." *Rodriguez*, 575 U.S. at 354. Any unrelated inquiries during an otherwise lawful traffic stop cannot prolong the stop beyond the amount of time reasonably required to complete the stop's mission (again, absent the reasonable suspicion ordinarily demanded to justify detaining an individual). *Id.* at 354-55. Importantly, the length of time required for a law enforcement officer to ask a question regarding an unrelated inquiry, even if it is purely investigatory in nature, by itself is insufficient to transform a reasonable, lawful stop into an unreasonable, unlawful one. *See State v. Griffith*, 2000 WI 72, ¶¶56-61, 236 Wis. 2d 48, 613 N.W.2d 72 (citing *Ohio v. Robinette*, 519 U.S. 33 (1996); and *State v. Gaulrapp*, 207 Wis. 2d 600, 558 N.W.2d 696 (Ct. App. 1996)). To that end, our supreme court has recently stated:

> While it is true that such a [frisk] search can be [an annoying, frightening, and perhaps humiliating experience], a request to conduct such a search cannot. In fact, that request is just like "questions seeking information" because it is just seeking information—to wit, whether Mr. Floyd would agree to be searched. What follows the answer to the question may be a non-negligible burden, but that says nothing about the nature of the question itself.

*Floyd*, 377 Wis. 2d 394, ¶28. In another recent case, our supreme court stated, "[The officer's] question about whether Wright held a [concealed carry weapon]

6

CCW permit did not 'measurably extend the duration of the stop.' Obviously, [the] question took some amount of time to ask. However, we view the time it took … to ask the CCW question as de minimis and virtually incapable of measurement." *Wright*, 386 Wis. 2d 495, ¶47.

¶14 Beyond the foregoing, another consideration informs our analysis. Namely, the Supreme Court has consistently eschewed bright-line rules when determining whether law enforcement violated an individual's Fourth Amendment rights. *See Robinette*, 519 U.S. at 39. Similarly, Wisconsin courts have rejected setting "[a] hard and fast time limit rule" for temporary detentions when considering the reasonableness of a stop's duration. *See State v. Gruen*, 218 Wis. 2d 581, 590, 582 N.W.2d 728 (Ct. App. 1998) (citation omitted). Rather, the touchstone of the Fourth Amendment has long been—and continues to be—whether the actions of law enforcement were reasonable. *See Robinette*, 519 U.S. at 39. Reasonableness, in turn, is a fact-intensive inquiry, measured in objective terms, by examining the totality of the circumstances. *Id.*

¶15 We conclude that Poplin's very brief, continued detention of Crone to ask if he could look at the two pill bottles she possessed was reasonable under the Fourth Amendment. To begin, we acknowledge that Poplin's request to view the pill bottles was unrelated to the traffic stop's original mission of addressing Crone's speeding—i.e., the traffic violation that warranted the stop. *See Wright*, 386 Wis. 2d 495, ¶24. His investigation of the two pill bottles was not an ordinary inquiry attendant to the stop. "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355. Additionally, Poplin's inquiry regarding the two pill bottles plainly was unrelated to his safety. *See Wright*, 386 Wis. 2d 495, ¶¶25-26.

7

Instead, Poplin testified that based on his training and experience, he thought illegal substances could be in the pill bottles.

¶16 Still, Poplin's question regarding the two pill bottles did not violate Crone's Fourth Amendment rights under the totality of the circumstances here. His simple request for Crone's consent to see the pill bottles did not unreasonably extend the traffic stop beyond the amount of time required to complete the stop's mission. In particular, and on this record, his request occurred either contemporaneously with him returning Crone's license or immediately thereafter.[3] Under either scenario, Poplin did not unreasonably extend the stop by merely asking the question. Indeed, the scenario here appears to fit squarely within our supreme court's language in *Floyd* and *Wright*. *See supra*, ¶13.

¶17 A contrary conclusion would create a rule gainsaying Fourth Amendment precedent in two ways. First, such a rule would run afoul of the notion that the length of time required to ask a question is insufficient to transform a lawful stop into an unlawful one, even when the question is investigatory in nature and unrelated to officer safety. *See Floyd*, 377 Wis. 2d 394, ¶28; *Griffith*, 236 Wis. 2d

---

[3] Crone takes the position on appeal that Poplin clearly completed the mission for the traffic stop—i.e., returned her driver's license—before he asked for her consent to search the two pill bottles. The record is not as clear on this matter as Crone makes it seem. Poplin testified that he "re-approached the vehicle, returned her driver's license to her, and asked to see the pill bottles." Additionally, neither party incorporates Poplin's narrative, which is attached to the complaint, to provide further clarification of the sequence of events. Therein, Poplin writes: "I re-approached on the driver's side, handed her driver's license and explained to her that she needs to get a current insurance card. I then asked [Crone] to show me the pill bottles in her purse."

To the extent Crone contends Poplin's testimony that he "completed the reason" for the traffic stop "prior to" when he asked Crone for the two pill bottles is dispositive, we note that an officer's subjective beliefs are generally inconsequential when the Fourth Amendment is implicated. *See, e.g.*, *State v. Kramer*, 2009 WI 14, ¶¶26-27, 315 Wis. 2d 414, 759 N.W.2d 598; *State v. Kyles*, 2004 WI 15, ¶23, 269 Wis. 2d 1, 675 N.W.2d 449. More importantly, and as we discuss in this opinion, the precise timing of Poplin's request for consent is inconsequential under the totality of the circumstances presented in this case.

48, ¶¶56-61 (discussing *Robinette* and *Gaulrapp*). Second, an adoption of Crone's contrary conclusion necessarily would create a rigid, bright-line rule that is historically viewed with disfavor in cases involving the reasonableness of searches and seizures implicating the Fourth Amendment. *See Robinette*, 519 U.S. at 39.

¶18     Crone's arguments on appeal do not dissuade us from the foregoing analysis and conclusions, especially based on existing precedent. She first asserts that *Gaulrapp* (and, by extension, *Robinette*) should not be relied upon because it does not "squarely address" the issues presented, with her also implying that it is no longer good law after *Rodriguez*. She further argues that *Robinette*, a Supreme Court case upon which *Gaulrapp* relied, is inapposite because, in her view, "*Robinette* was not about the legality of an extended stop."

¶19     We disagree that *Robinette* and *Gaulrapp* do not inform the issues presented. *Robinette* held that the Fourth Amendment does not require a lawfully seized defendant be advised that he or she is "free to go" before his or her consent to a search will be recognized as voluntary. *Robinette*, 519 U.S. at 35. In so doing, the Court rejected a bright-line rule requiring a "free to go" statement and concluded that a fact-specific, contextual approach for assessing the voluntariness of a defendant's consent to search was consistent with the Court's Fourth Amendment precedent determining the reasonableness of a search or seizure. *Id.* at 39-40.

¶20     *Gaulrapp*, in turn, addressed whether law enforcement officers were permitted to ask a driver involved in a traffic stop—whom they stopped after observing his vehicle's "loud muffler that was almost dragging on the roadway"— if he had drugs or weapons inside his vehicle, and if they could have consent to search his vehicle and person. *Gaulrapp*, 207 Wis. 2d at 603, 609. This court concluded Gaulrapp's detention "was not unreasonably prolonged by the asking of

one question. After that question, the detention was prolonged because Gaulrapp consented to the search." *Id.* at 609. We also observed that *Robinette*'s holding was difficult to reconcile with Gaulrapp's position "that the very asking of the first question about drugs and firearms, without a reasonable suspicion that he possessed either, transformed the legal stop into an illegal stop, making his consent automatically invalid." *Id.* at 608.

¶21 Crone's attempts to distinguish *Robinette* and *Gaulrapp* are unpersuasive for a few reasons. First, while *Robinette* involved the voluntariness of a defendant's consent to search, we find *Robinette* instructive because the Supreme Court's rejection of a per se rule in favor of the totality of the circumstances approach is consistent with the critical inquiry here—to wit, whether Poplin's question unrelated to the basis for the traffic stop was reasonable under the totality of the circumstances. Additionally, *Gaulrapp*'s factual similarities involving an officer's simple request for consent to search are not diminished by *Robinette* not having expressly decided the legality of the extended stop at issue in that case. Indeed, as indicated above, *Gaulrapp* appears to have implicitly answered that the extended traffic stop in *Robinette* was lawful under existing precedent. *See Gaulrapp*, 207 Wis. 2d at 608. In all, we see nothing to suggest that either *Robinette* or *Gaulrapp* is at odds with the Supreme Court's more recent *Rodriguez* decision and, consequently, is no longer good law. We therefore reject Crone's attempts to downplay those authorities.[4]

---

[4] We do agree with Crone on two points, however. First, *State v. Wright*, 2019 WI 45, 386 Wis. 2d 495, 926 N.W.2d 157, is materially distinguishable and, therefore, not dispositive of the issue on appeal. Second, *Brown*, the case for which we held Crone's appeal in abeyance, ultimately does not resolve the issue presented. The decision did, however, reiterate the principle that law enforcement may lawfully ask an investigative question unrelated to a traffic stop if doing so does not measurably extend the duration of the stop. *Brown*, 392 Wis. 2d 454, ¶16.

¶22 Crone also asserts that Poplin's request unlawfully extended the traffic stop under the Supreme Court's decision in *Rodriguez*, a case she maintains more "squarely addresses the issue presented" than *Robinette* and *Gaulrapp*. *Rodriguez* involved a K-9 dog sniff unrelated to the mission of the traffic stop. *Rodriguez*, 575 U.S. at 348, 355-56. The officer undisputedly had completed all of the stop's mission-related activities when he asked Rodriguez for permission to conduct a dog sniff, which Rodriguez declined to grant. *Id.* at 352. The officer then instructed Rodriguez to exit the vehicle and wait for a second officer to arrive on the scene. *Id.* Seven to eight minutes had elapsed from the time the stop's mission-related activities had been completed to when the second officer arrived and the dog sniff took place. *Id.*

¶23 The Court concluded that the dog sniff violated Rodriguez's Fourth Amendment rights because it prolonged the stop beyond the time reasonably required to complete its mission. *See id.* at 350-51, 357. In so doing, the Court stated, "The critical question … is not whether the dog sniff occurs before or after the officer issues a ticket … but whether conducting the sniff prolongs—*i.e.*, adds time to—the stop[.]" *Id.* at 357 (citations omitted).

¶24 Crone argues *Rodriguez* supports her position and resolves this case in her favor. She maintains that the traffic stop's mission had already been completed when Poplin asked for her consent and that his request added time to the stop in a way that is "absolutely measurable," leaning heavily on *Rodriguez*'s language that "prolongs" means "adds time to."

¶25 Accepting Crone's factual premise, for argument's sake, that Poplin's request occurred immediately after he returned her license, *see supra*, ¶16 & n.3, we are unpersuaded that *Rodriguez* is either dispositive of, or otherwise supports,

11

her position. Unlike Poplin's stop of Crone, the stop in **Rodriguez** was prolonged many minutes (seven to eight) for law enforcement to conduct an activity (a dog sniff) unrelated to the stop's mission, all without Rodriguez's consent. Poplin's simple request for Crone's consent to view the two pill bottles—which consent Crone readily provided—occurring immediately after he handed her license back—which is a mission-related activity—is materially different.[5] *Cf.* **State v. Gammons**, 2001 WI App 36, ¶¶3, 19, 241 Wis. 2d 296, 625 N.W.2d 623 (distinguishing *Gaulrapp* by concluding that the traffic stop at issue was transformed into an unlawful detention because during an unrelated investigation, the defendant did not consent immediately to a search of his vehicle but only consented after the threat of a K-9 dog sniff).

¶26 We further disagree with the notion, implicit in Crone's argument, that **Rodriguez** created a rigid rule on when an inquiry unrelated to a traffic stop is unlawful. The quote upon which Crone relies concludes a paragraph discussing that the reasonableness of a seizure is measured by what law enforcement actually did in a particular instance. *See* **Rodriguez**, 575 U.S. at 357. Notably, the Court specifically rejected the government's argument that "an officer can earn bonus time to pursue an unrelated criminal investigation" if he or she completed expeditiously all mission-related activities. *Id.* Instead, the Court concluded that if an officer can complete mission-related inquiries expeditiously, "then that is the amount of time reasonably required to complete the stop's mission …. [A] traffic stop prolonged beyond that point is unlawful." *Id.* (citations omitted).

---

[5] To be sure, there would come a point where, after the traffic stop's mission had ended, a delay in actually ending the stop—which would occur, for example, when the officer tells the driver he or she is free to leave, or when the officer returns to his or her vehicle—before asking such a question would impermissibly extend the stop and violate the Fourth Amendment. Indeed, such a delay may not need to be that long for the extension to become unlawful. We merely conclude that, under the facts in this case, such an unreasonable and unlawful delay did not occur.

¶27    This context from the Court's decision is important because it demonstrates that the demarcation of when unrelated mission activities unreasonably and unlawfully extend a stop is inexact.  *Cf. id.* ("The critical question … is not whether the dog sniff occurs before or after the officer issues a ticket …").  Rather, a court assesses the reasonableness of an officer's manner of conducting unrelated mission activities.  ***Id.*** at 354, 357.  And, similar to other Fourth Amendment inquiries, reasonableness is determined based on the totality of the circumstances. *See* ***Robinette***, 519 U.S. at 39.  A holistic reading of ***Rodriguez*** therefore illustrates that it did not create the bright-line rule Crone seemingly relies upon in her appellate arguments.

¶28    We emphasize one final point.  We disagree with the notion underlying Crone's arguments that Poplin's request for consent violated her Fourth Amendment rights merely because the inquiry occurred at the very end of (or immediately after) the stop, rather than "during" it.  To be sure, the timing of when the unrelated investigations in ***Rodriguez***, ***Wright*** and ***Floyd*** occurred does not mirror precisely when Poplin's unrelated inquiry occurred here.  Still, we believe the principles derived from those cases govern our analysis.  As discussed above, although the time it takes to ask a question is measurable, the fact that an inquiry is made does not, in and of itself, create the type of unreasonable burden to make an extension of a traffic stop unlawful for Fourth Amendment purposes.  That notion is true whether the question occurs in the "middle" of a stop versus at the very end of one.  Under the circumstances of this case, we perceive no valid reason why the reasonableness of such a question turns on when it was asked during a lawful encounter.  Notwithstanding, we strongly caution that delays between the proper ending of a traffic stop and when an officer poses an unrelated, investigatory

13

question need not be long at all before the stop's extension becomes unreasonable and, thus, unlawful. *See supra*, ¶25 n.5.

¶29 Having determined that Poplin's simple request for Crone's consent did not unreasonably or unlawfully extend the traffic stop, we now turn to whether her consent to search the two pill bottles was constitutionally valid. We conclude that it was. Crone's consent was constitutionally valid if, under the totality of the circumstances, it was freely and voluntarily given. *See **Floyd***, 377 Wis. 2d 394, ¶¶29-30. The record does not indicate Poplin employed any misrepresentation, deception or trickery, nor did he use any threats or physical intimidation. *See **id.***, ¶32. Moreover, Crone makes no appellate argument asserting the contrary. Thus, Crone's consent turned the continued encounter into a consensual one, such that the Fourth Amendment was no longer implicated, and Poplin's continued inquiries regarding the pill bottles were lawful. The circuit court therefore did not err by denying Crone's motion to suppress.

*By the Court.*—Judgment affirmed.

¶30    STARK, P.J. (*concurring*). I concur in the result reached by the majority opinion because I agree that it is compelled by binding precedent—specifically, by the Wisconsin Supreme Court's decision in *State v. Wright*, 2019 WI 45, 386 Wis. 2d 495, 926 N.W.2d 157.  I write separately, however, to express concern that the majority's analysis, as compelled by *Wright*, is inconsistent with the purpose of the Fourth Amendment and fails to properly balance the public and private interests at stake.

¶31    As the majority aptly notes, the tolerable duration of a traffic stop "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop … and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citations omitted).  "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.*  Although the Fourth Amendment "tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention," *id.*, the seizure "remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" *Id.* at 355 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)).

¶32    In *Wright*, the Wisconsin Supreme Court held that no Fourth Amendment violation occurred when, during a traffic stop for an unrelated traffic violation, an officer asked the defendant whether he had a permit to carry a concealed weapon (CCW permit) and then completed a CCW permit check. *Wright*, 386 Wis. 2d 495, ¶¶12, 50.  The *Wright* court acknowledged that both the officer's question and the permit check were unrelated to the mission of the stop—

they did not address the traffic violation that formed the basis for the stop, they were not part of the ordinary inquiries incident to the stop, and they did not further the interest of officer safety. *Id.*, ¶¶24, 36-37. Nevertheless, the court concluded that the officer's inquiries did not violate the Fourth Amendment because they did not measurably extend the duration of the stop. *Id.*, ¶¶12, 47-50. As particularly relevant here, the court acknowledged that the officer's "CCW permit question took some amount of time to ask." *Id.*, ¶47. However, the court stated that the time it took the officer to ask the CCW question was "de minimis and virtually incapable of measurement. Thus, the CCW question did not violate the Fourth Amendment in the instant case." *Id.*

¶33 Accordingly, the supreme court in *Wright* held that an officer's asking of a single question unrelated to the mission of a traffic stop does not violate the Fourth Amendment because the negligible amount of time required to ask a question is "de minimis" and thus does not measurably extend the duration of the stop. Under *Wright*, which is binding precedent, I have no choice but to agree with the majority that deputy Poplin did not violate the Fourth Amendment by asking to see the pill bottles in Crone's purse. That question was unrelated to the mission of the stop in that it was not related to the underlying traffic violation, it was not part of the ordinary inquiries incident to the stop, and it was not related to officer safety. *See id.*, ¶24. In addition, as the State correctly concedes, Poplin's question was not supported by reasonable suspicion to expand the scope of the stop to inquire into whether Crone legally possessed the contents of the pill bottles. *See State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124. Nonetheless, under *Wright*,

2

the time necessary to ask the question was "de minimis" and, as such, Poplin's asking of the question did not violate Crone's Fourth Amendment rights.[1]

¶34    Although we are bound by *Wright*, I write separately because I am concerned that the supreme court's holding in that case is inconsistent with the "basic purpose" of the Fourth Amendment—that is, "to safeguard the privacy and

---

[1] According to the majority, *State v. Wright*, 2019 WI 45, 386 Wis. 2d 495, 926 N.W.2d 157, is "materially distinguishable and, therefore, not dispositive of the issue on appeal." Majority, ¶21 n.4. I disagree. Instead, for the reasons already discussed, I conclude *Wright* directly controls the issue of whether Poplin's question to Crone impermissibly extended the duration of the traffic stop.

The majority instead relies on *State v. Floyd*, 2017 WI 78, ¶28, 377 Wis. 2d 394, 898 N.W.2d 560, and *State v. Griffith*, 2000 WI 72, ¶¶56-61, 236 Wis. 2d 48, 613 N.W.2d 72, for the proposition that "the length of time required to ask a question is insufficient to transform a lawful stop into an unlawful one, even when the question is investigatory in nature and unrelated to officer safety." Majority, ¶17. I conclude, however, that both *Floyd* and *Griffith* are distinguishable. The officer's questions in *Floyd*—i.e., whether Floyd had any weapons or anything that could harm the officer, and whether the officer could perform a search for his safety—were related to officer safety and were therefore part of the "mission" of the traffic stop. *See Floyd*, 377 Wis. 2d 394, ¶28; *Wright*, 386 Wis. 2d 495, ¶24. Here, Poplin's request to see Crone's pill bottles was plainly unrelated to officer safety.

In *Griffith*, officers stopped a vehicle that they knew was registered to an individual who did not have a valid driver's license. *Griffith*, 236 Wis. 2d 48, ¶¶8-10. Griffith, who was later alleged to have been a passenger in the back seat of the vehicle, conceded that the initial stop of the vehicle was lawful. *Id.*, ¶¶13, 27. He argued, however, that the lawful seizure "became unlawful when, having already determined that the driver had no valid license, [an officer] asked the rear passenger his name and date of birth." *Id.*, ¶28. In rejecting Griffith's argument, the supreme court noted that "the brief period of time it takes to ask a question does not unreasonably prolong a temporary detention." *Id.*, ¶56. The court also concluded, however, that "asking the rear passenger for identification furthered several legitimate public interests and was reasonably related to the purpose of the stop." *Id.*, ¶49. In other words, the question was part of the mission of the traffic stop, which is undisputedly not the case here.

Moreover, the *Griffith* court's statement that "the brief period of time it takes to ask a question does not unreasonably prolong a temporary detention" should not be read in isolation. *See id.*, ¶56. The *Griffith* court did not hold that the questioning in that case was permissible simply because of the minimal amount of time it took. Instead, the *Griffith* court engaged in a balancing analysis, in which it weighed "the public interest served by the questioning against the incremental liberty intrusion that resulted from the questioning." *Id.*, ¶38. As discussed below, I conclude such a balancing analysis would be a more appropriate means of assessing the reasonableness of Poplin's question to Crone in this case, instead of considering only the amount of time required to ask that question.

security of individuals against arbitrary invasions by governmental officials." *See Camara v. Municipal Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967). That purpose is not served by enforcing a blanket rule permitting law enforcement officers to extend traffic stops to conduct unrelated inquiries that are unsupported by reasonable suspicion, as long as those inquiries do not take longer than the amount of time needed to ask a question. A single question may, under certain circumstances, constitute precisely the type of arbitrary invasion into an individual's privacy or security against which the Fourth Amendment is intended to protect.

¶35 I therefore submit that the negligible amount of time needed to ask an unrelated question during a traffic stop cannot be the sole criterion by which the reasonableness of the extension of the stop is judged. Instead, I would look to *Brown v. Texas*, 443 U.S. 47, 50 (1979) (citations omitted), where the United States Supreme Court explained that the reasonableness of a seizure that is less intrusive than a traditional arrest depends on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." "Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Id.* at 50-51.

¶36 In *State v. Griffith*, 2000 WI 72, ¶37, 236 Wis. 2d 48, 613 N.W.2d 72, the Wisconsin Supreme Court recognized that *Brown* "sets forth the framework that guides our examination of whether the police conduct" during a traffic stop constitutes an unreasonable seizure for Fourth Amendment purposes. The defendant in *Griffith* did not challenge the reasonableness of the initial traffic stop, but he argued subsequent police conduct during the stop—namely, an officer's

4

asking a back seat passenger for identifying information—violated the Fourth Amendment. *See id.*, ¶38. The court explained that under those circumstances, the issue was "whether the incremental intrusion that resulted from the identification questions was unreasonable." *Id.* Consistent with *Brown*, the court stated the resolution of that issue required it to "weigh the public interest served by the questioning against the incremental liberty intrusion that resulted from the questioning." *Id.*

¶37 In conducting that analysis, the *Griffith* court first concluded that "permitting law enforcement officers to request identifying information from passengers in traffic stops serves the public interest in several ways that are reasonably related to the purpose of a traffic stop." *Id.*, ¶45. First, the court stated there is a public interest in completing the investigation of the traffic violation that justified the stop, which might include obtaining a passenger's identifying information. *Id.*, ¶46. Second, the court stated it was reasonable for the officers in *Griffith* to request the back seat passenger's identifying information in order to determine whether he was licensed to drive, as they had already learned that the driver and another passenger did not have valid licenses. *Id.*, ¶47. The court reasoned that there is a public interest "in determining whether a car must be towed at public expense or may be driven away by a private party," and "[p]ermitting police officers to talk to passengers during a traffic stop will further this interest." *Id.* Third, the court stated there is a "general public interest in attempting to obtain identifying information from witnesses to police-citizen encounters," as those individuals may later be able to assist police in locating the person who violated the law and may also be able to provide information about what occurred during the stop if questions arise about law enforcement's conduct. *Id.*, ¶48.

5

¶38 Turning to the private side of the balance, the *Griffith* court noted that: (1) the traffic stop took place in public view; (2) the entire encounter took only a few minutes; (3) the back seat passenger had the right to refuse to answer the identification questions; (4) an officer's mere posing of a question does not constitute a seizure under the Fourth Amendment; and (5) the time needed to ask the identification questions was "very brief." *Id.*, ¶¶50-55. The court then concluded:

> In sum, on the private side of the equation, we find that the additional interference with the passenger's personal liberty that resulted from the identification questions was minimal. The passenger was already seized pursuant to a lawful traffic stop. The only change in the passenger's circumstances that resulted from the questioning is that rather than sitting silently while being temporarily detained, he had to decide whether to answer the officer's questions. The passenger probably felt some obligation to respond to the officer's questions, but he was under no legal obligation to do so and could not have been prosecuted for refusing to respond.
>
> Weighing the public interest served by permitting police to request identifying information from passengers against the incremental intrusion upon individual privacy interests, we conclude that the public interests are substantial and the interference with private liberty interests is *de minimis*. We therefore hold that the identification questions did not transform the reasonable search into an unreasonable one under the circumstances of this case.

*Id.*, ¶¶62-63.

¶39 Absent our supreme court's holding in *Wright*, I would apply the type of balancing analysis set forth in *Brown* and *Griffith* and conclude that Poplin's extension of the traffic stop to ask about the pill bottles in Crone's purse was unreasonable and therefore violated the Fourth Amendment. Poplin stopped Crone for speeding—a relatively minor civil forfeiture offense—at 9:00 a.m. The State concedes that he had no reasonable suspicion to ask Crone about the pill bottles he

6

saw in her purse. Although there is undoubtedly a public interest in ensuring that individuals who are stopped for speeding are not operating while under the influence of drugs, Poplin did not testify that anything about either Crone's driving or her behavior during the stop made him believe that she was impaired. And, while Poplin observed two pill bottles in Crone's purse, he had no reason to believe that those bottles did not contain legal prescription medications. Under these circumstances, there was minimal—if any—public interest in questioning Crone about the pill bottles. Unlike the identification questions in *Griffith*, Poplin's question about the pill bottles was not necessary to complete his investigation of the speeding violation, to determine the identity of potential witnesses, or to serve another purpose necessitated by the stop, such as determining who might be able to move a stopped vehicle out of a private parking lot.

¶40 On the other hand, Poplin's question about the pill bottles interfered with Crone's significant privacy interest in her own medical information. As in *Griffith*, Crone's stop was conducted in the public view, Poplin's question took only a few seconds, and Crone could have declined to answer it. Unlike in *Griffith*, however, the question in this case pertained to Crone's private medical information. Our society recognizes the sensitive nature of a person's private medical information and therefore treats such information as being highly confidential. *See, e.g.*, WIS. STAT. § 146.82(1) (2019-20) (stating that all patient health care records "shall remain confidential"). The officer in *Griffith* merely asked the back seat passenger to provide his name and date of birth—innocuous identifying information that individuals are routinely asked to provide in various facets of day-to-day life. An officer's request for such innocuous information does not impact an individual's privacy interest in the same way as an officer's request that a person disclose his or her confidential medical information.

7

¶41   On these facts, I would conclude that Crone's significant interest in keeping her confidential medical information private outweighed the minimal—or nonexistent—public interest served by Poplin questioning her about the pill bottles in her purse. Although the time needed to ask about the pill bottles may have been brief, the nature of the intrusion, and the lack of any significant public interest supporting it, convinces me that under the totality of the circumstances the extension of the traffic stop to ask about the pill bottles was unreasonable. The question was, quite simply, an arbitrary invasion of Crone's privacy by the government—the very evil against which the Fourth Amendment was intended to protect.

¶42   Before closing, I pause to address what I perceive to be two other deficiencies in the majority's analysis, as compelled by our supreme court's holding in *Wright*. First, the majority emphasizes that the United States Supreme Court "has consistently eschewed bright-line rules when determining whether law enforcement violated an individual's Fourth Amendment rights." Majority, ¶14. The majority then correctly asserts that the "touchstone" of the Fourth Amendment is reasonableness, and that reasonableness "is a fact-intensive inquiry, measured in objective terms, by examining the totality of the circumstances." *Id.*

¶43   In this case, however, it is actually the majority that applies a bright-line rule in concluding that Poplin's question to Crone about the pill bottles did not violate the Fourth Amendment. Consistent with *Wright*, the majority concludes Poplin's question did not unreasonably extend the traffic stop because "the length of time required to ask a question is insufficient to transform a lawful stop into an unlawful one, even when the question is investigatory in nature and unrelated to officer safety." Majority, ¶17. That is a bright-line rule—under *Wright* and the majority's analysis, a single question unrelated to the mission of a traffic stop will never unreasonably extend the duration of a traffic stop and therefore will

8

never violate the Fourth Amendment. The analysis I propose would instead consider the totality of the circumstances surrounding the extension of the stop in order to determine whether that extension was reasonable for Fourth Amendment purposes.

¶44     My second reservation regarding the majority/*Wright* analysis is this: although the majority and *Wright* apply a bright-line rule that may be employed in cases where an officer extended a traffic stop by asking a single question, they provide no guidance for other cases as to how long a stop may be extended by unrelated inquiries before the extension stops being "de minimis" and becomes unreasonable. A single question may take only a few seconds to ask. But what if the officer asks two questions? Or, what if the officer asks a series of interrelated questions that last twenty seconds, or even one minute? Would the extension of the traffic stop be unreasonable under those circumstances? The majority/*Wright* analysis provides no guidance in such cases. In contrast, a totality of the circumstances approach that balances the public and private interests at stake is equally applicable regardless of the length of time by which unrelated inquiries extend a traffic stop in a particular case.[2]

¶45     In summary, while I conclude that the result reached by the majority in this case is compelled by our supreme court's holding in *Wright*, I am concerned that the majority/*Wright* approach is inconsistent with the Fourth Amendment's purpose of safeguarding individuals' privacy and security against arbitrary

---

[2] I agree with the majority that for purposes of determining whether unrelated inquiries unreasonably extended a traffic stop, it makes no difference whether the unrelated inquiries occurred during the course of the stop or at its conclusion. *See* Majority, ¶28. I note, however, that the balancing analysis that I would apply in this case to assess the reasonableness of the extension applies equally well regardless of whether the unrelated inquiries occurred during or at the end of the stop.

9

governmental intrusions. If I were writing on a blank slate, I would therefore apply the type of balancing analysis set forth in **Brown** and **Griffith** and conclude that Poplin's extension of the traffic stop to inquire about the pill bottles in Crone's purse was unreasonable and violated the Fourth Amendment. **Wright** is, however, binding precedent. I therefore respectfully concur.