COURT OF APPEALS
DECISION
DATED AND FILED

March 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP1206-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2021CF90

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

LAURIE KAY LYON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Buffalo County: THOMAS W. CLARK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Laurie Kay Lyon appeals from a judgment of conviction for possession of methamphetamine, arguing that the circuit court erred

by denying her motion to suppress evidence obtained from her vehicle during a traffic stop because law enforcement unreasonably extended the duration of the stop to conduct an exterior canine sniff. We conclude that the court did not err by denying Lyon's motion, and we affirm the judgment of conviction.

## BACKGROUND

¶2      The State charged Lyon with possession of methamphetamine, possession of narcotic drugs, and possession of drug paraphernalia. The charges stemmed from a traffic stop conducted by Sergeant Nic Scholl of the Buffalo County Sheriff's Department, during which a canine alerted to the presence of narcotics in a vehicle that Lyon was driving. Scholl searched the vehicle and located evidence leading to the charges in this case.

¶3      Lyon filed a motion to suppress the evidence obtained as a result of the traffic stop. She argued that Scholl had unreasonably extended the duration of traffic stop by conducting the canine sniff on the exterior of the vehicle.

¶4      The circuit court held a suppression hearing, during which portions of an audiovisual recording from Scholl's body-worn camera were admitted into evidence. Scholl testified that he stopped Lyon's vehicle because its "exhaust was much louder than any of the other vehicles on the roadway." Upon initiating the traffic stop with his vehicle's lights and sirens, Scholl reported Lyon's vehicle information to the agency's dispatch center by radio, and Lyon pulled over.

¶5      After making contact with Lyon, Scholl observed that she had "lit up a fresh cigarette," was talking rapidly, and was "moving around a lot." Lyon provided her driver's license to Scholl, but she informed Scholl that she did not

have her proof of insurance with her. The address on Lyon's driver's license did not match the address she provided to Scholl.

¶6 Scholl then asked Lyon if there was "any reason why a dog would alert to [her] car." Lyon responded that she did not understand what Scholl had asked. Scholl repeated his question, and Lyon stated, "No." Scholl also explained at the suppression hearing that he had previously responded to Lyon's residence for "drug-related issues"; however, he conceded that, at the time of the traffic stop, he could not recall whether those issues were related to Lyon or her child. Scholl took Lyon's driver's license and returned to his vehicle. Scholl's initial contact with Lyon lasted less than two minutes.

¶7 Upon returning to his vehicle, Scholl began typing on a computer. Scholl testified that he conducted a vehicle "records check" at that time. Scholl explained that these records would give him "vehicle registration information," which he had not yet received from dispatch. Scholl also stated that there was "a detail going on," meaning the radio frequencies were busy, and Scholl was "trying to do a lot of stuff via the computer."

¶8 While conducting the vehicle records check, Scholl told another officer at the scene to "keep talking to [Lyon], I'm going to CCAP[1] her real quick." It appears from the audiovisual recording that once Scholl completed the vehicle records check, he began to search Lyon's name on CCAP. According to Scholl, he did so because the address on her driver's license was not correct, and

---

[1] The Consolidated Court Automation Programs (CCAP) "is a case management system provided by [the] Wisconsin Circuit Court Access program." *State v. Bonds*, 2006 WI 83, ¶6, 292 Wis. 2d 344, 717 N.W.2d 133. CCAP "provides public access online to reports of activity in Wisconsin circuit courts." *Id.*

she did not have proof of insurance for her vehicle. Scholl testified that CCAP would show him whether Lyon had "ever been cited for not updating her address, not updating her insurance or not having insurance," and whether Lyon had any outstanding warrants.

¶9 As Scholl was reviewing CCAP records, dispatch was sending him updates regarding the status of Lyon's vehicle registration. At some point after he finished his CCAP search, Scholl requested from the agency's dispatch center, by computer, Lyon's "criminal history."[2] Scholl stated that he requested these records to determine whether Lyon had "any open cases for drugs or warrants," including those from outside of Wisconsin that would not be displayed on CCAP. He stated that he requests such records during every traffic stop.

¶10 Scholl also sent a text message to a detective asking him whether he recognized Lyon's name.[3] Scholl testified that he sent the text message as part of an inquiry into possible drug activity. A little over one minute later, Scholl told the detective over the radio to check his messages. Approximately fifteen seconds later, the detective responded to Scholl, stating, "Dog it." Scholl testified that the detective's statement meant that "it would be worth deploying the … canine."

---

[2] Around this time, the other officer on scene informed Scholl that Lyon was making a lot of movements in her vehicle. Shortly thereafter, Scholl placed his body-worn camera on the dashboard of his vehicle for approximately one minute and twenty seconds. During this period, it is impossible to see the computer screen. Scholl testified that he moved the camera because "if [Lyon is] moving around a lot or like gets out of the car, it's more visible on my body camera."

[3] The precise time stamp of when Scholl sent the text message is unavailable, partly due to the camera being moved as noted above. However, consistent with the circuit court's overall ruling and findings, the text message was sent sometime between the 4:21 mark of the audiovisual recording (when the camera was moved) and the 4:49 mark (when Scholl told the other officer on the scene that he had sent a text to the detective), meaning the text was sent *after* Scholl began his CCAP search.

¶11    Immediately after receiving the detective's response, Scholl deployed a "certified narcotics canine" from the backseat of his vehicle. Scholl testified that by this time, he would have known that Lyon had a valid driver's license and was the registered owner of the vehicle. However, he was still waiting on Lyon's criminal history from dispatch.

¶12    During the canine sniff of the exterior of Lyon's vehicle, the canine "alerted" to the rear passenger door. Lyon then admitted to the officers that she had methamphetamine in the vehicle. A subsequent search of the vehicle located evidence that underlies the charges in this case, and Lyon was placed under arrest. Scholl testified that dispatch did not return the criminal history request prior to Lyon's arrest. The total time that elapsed from when the initial stop was made to when the canine alerted was just over six minutes.

¶13    The circuit court denied Lyon's motion to suppress in an oral ruling, after concluding that Scholl did not unreasonably extend the duration of the traffic stop. The court concluded that an officer checking for warrants is part of an ordinary inquiry incident to a traffic stop, and it found that Scholl did not have "information relative to warrants outside of the [s]tate" or a "complete criminal history" when he conducted the exterior canine sniff. The court also found that Scholl had additional reasonable suspicion, beyond that required for the initial seizure, to extend the duration of the traffic stop for the canine sniff.

¶14    Lyon ultimately pled no contest to possession of methamphetamine, and the remaining counts were dismissed and read in. Consistent with the parties' joint recommendation, the circuit court imposed a sentence consisting of solely court costs. This appeal follows.

**DISCUSSION**

¶15 There is no dispute that Scholl's initial seizure of Lyon based on her vehicle having a loud muffler was constitutional. The issue on appeal is whether Scholl unreasonably extended the duration of the traffic stop by conducting a canine sniff of Lyon's vehicle. The State asserts that the purpose of the initial stop was not completed, and reasonably so, when Scholl conducted the canine sniff because he was waiting for information from dispatch regarding Lyon's criminal history.[4]

¶16 The Fourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV; *State v. VanBeek*, 2021 WI 51, ¶23, 397 Wis. 2d 311, 960 N.W.2d 32 ("The Wisconsin Constitution contains nearly identical protections, WIS. CONST. art. I, § 11, which we have interpreted consistent with its federal counterpart."). "The '[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning' of the Fourth Amendment." *State v. Houghton*, 2015 WI 79, ¶31, 364 Wis. 2d 234, 868 N.W.2d 143 (alteration in original; citation omitted).

---

[4] Alternatively, the State argues that any extension of the traffic stop beyond the time necessary for the stop's original purpose was justified because Scholl had reasonable suspicion of drug activity. We do not address this argument, or the circuit court's decision regarding the same, because we affirm the court's order on the ground that the traffic stop was not unreasonably extended. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (stating that we need not address alternative arguments when one is dispositive).

¶17 "Traffic stops are meant to be brief interactions with law enforcement officers, and they may last no longer than required to address the circumstances that make them necessary." *State v. Floyd*, 2017 WI 78, ¶21, 377 Wis. 2d 394, 898 N.W.2d 560. When a traffic infraction is the basis for a traffic stop, addressing the infraction is the "purpose" (or "mission") of the stop, and the stop may "last no longer than is necessary to effectuate th[at] purpose." *Id.* (alteration in original; citation omitted); *State v. Wright*, 2019 WI 45, ¶8, 386 Wis. 2d 495, 926 N.W.2d 157 (citation omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Floyd*, 377 Wis. 2d 394, ¶21 (citation omitted). "An expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion." *State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124.

¶18 "[T]he line between traffic stops of proper duration and those that extend into unconstitutional territory" is drawn "according to functional considerations" assessed in the context of the totality of the circumstances. *Floyd*, 377 Wis. 2d 394, ¶22. "Generally speaking, an officer is on the proper side of the line so long as the incidents necessary to carry out the purpose of the traffic stop have not been completed, and the officer has not unnecessarily delayed the performance of those incidents." *Id.*

¶19 "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alteration in original; citation omitted). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the

7

automobile's registration and proof of insurance." *Id.* A canine sniff is not an ordinary inquiry incident to a traffic stop. *State v. Smith*, 2018 WI 2, ¶10 n.9, 379 Wis. 2d 86, 905 N.W.2d 353. However, a canine sniff of a vehicle's exterior during a traffic stop does not violate the constitution, even if conducted without reasonable suspicion or probable cause, if the sniff occurs simultaneously with the ordinary inquiries incident to the traffic stop. *See State v. Brown*, 2020 WI 63, ¶18, 392 Wis. 2d 454, 945 N.W.2d 584.

¶20 Whether a defendant's rights under the Fourth Amendment have been violated is a question of constitutional fact subject to a two-step standard of review. *Houghton*, 364 Wis. 2d 234, ¶18. First, we uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* The clearly erroneous standard of review applies equally when the record consists of disputed testimony and an audiovisual recording. *State v. Walli*, 2011 WI App 86, ¶17, 334 Wis. 2d 402, 799 N.W.2d 898. We then independently apply constitutional principles to those facts. *Houghton*, 364 Wis. 2d 234, ¶18.

¶21 Lyon does not dispute that Scholl's actions of checking Lyon's vehicle information and criminal record were part of the "ordinary inquiries" incident to the traffic stop. *See Rodriguez*, 575 U.S. at 355. Instead, Lyon argues that Scholl impermissibly extended the duration of the traffic stop, without the requisite reasonable suspicion, by asking her questions about drugs and communicating with the detective about the detective's familiarity with Lyon. Lyon also argues that Scholl's communication with the detective occurred "prior to … running [her] driver's license" for records.

¶22 Lyon, however, overlooks the circuit court's findings that Scholl did not have "information relative to warrants outside of the [s]tate" or a "complete

criminal history" when he conducted the canine sniff. Upon reviewing the suppression hearing transcript and the audiovisual recording from Scholl's body-worn camera, we conclude that these findings are not clearly erroneous. Based on these findings, Scholl requested a criminal history check through the agency's dispatch center—something he does for every traffic stop—and initiated the canine sniff while simultaneously waiting for those records. This course of action is permitted under binding case law. *See **Rodriguez***, 575 U.S. at 355; ***Smith***, 379 Wis. 2d 86, ¶10 n.9; ***Brown***, 392 Wis. 2d 454, ¶18.

¶23    In addition, we agree with the State that there is no indication in the record that "the time reasonably required to complete the mission" of the traffic stop—e.g., obtaining Lyon's driver's license and conducting record checks—had elapsed before the canine sniff occurred. To the contrary, the record shows that the total time that elapsed from the time Scholl pulled Lyon over to the time the canine alerted was just over six minutes. It is not unreasonable, in our view, for these duties to take longer than six minutes, particularly when, like here, a driver does not have his or her proof of insurance and his or her license lists an incorrect address. Under the totality of the circumstances present, Scholl was permitted to conduct additional investigation into these issues, and he could have issued citations to Lyon. *See* WIS. STAT. § 343.22(2), (4) (2023-24)[5] (providing a forfeiture penalty for a driver who fails to take certain steps to update his or her address); WIS. STAT. §§ 344.65(1)(b), 344.62(2) (providing a forfeiture penalty for a driver who fails to have proof of insurance "in his or her immediate possession").

---

[5] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

¶24    Moreover, it is immaterial to our Fourth Amendment analysis here that Scholl sent a text message to the detective while he was conducting records inquiries because the act of sending the text message did not change the fact that Scholl was still waiting for records from dispatch.[6]  Likewise, it is immaterial that Scholl asked Lyon whether there was "any reason why a dog would alert to [her] car."  *See **State v. Crone***, 2021 WI App 29, ¶13, 398 Wis. 2d 244, 961 N.W.2d 97 ("[T]he length of time required for a law enforcement officer to ask a question regarding an unrelated inquiry, even if it is purely investigatory in nature, by itself is insufficient to transform a reasonable, lawful stop into an unreasonable, unlawful one.").

¶25    Lyon attempts to liken this case to ***State v. Gammons***, 2001 WI App 36, 241 Wis. 2d 296, 625 N.W.2d 623.  In that case, however, the officer exceeded the duration of the permissible scope of the traffic stop when he continued to detain the driver after the driver told him that there were no drugs in the vehicle and that he would not consent to a search.  *Id.*, ¶1.  Importantly, the officer's continued seizure of the driver occurred after the purpose for the initial stop (including checking the driver's license) had been completed.  *See id.*, ¶¶2-3, 24.  Conversely, Scholl's continued seizure of Lyon was constitutional for the reasons explained above.  That is, Scholl was reasonably still performing the original mission of the traffic stop simultaneously with the canine sniff.

---

[6] To the extent that Lyon argues that Scholl sent the text message to the detective prior to beginning the records requests, the record does not support that assertion.  Instead, the record supports the following events in chronological order: Scholl requested vehicle information records from dispatch when he initiated the stop; Scholl conducted a vehicle "records check" upon returning to his vehicle; Scholl searched Lyon on CCAP while receiving the vehicle information from dispatch; and Scholl then requested Lyon's criminal history.  As noted previously, *see supra* note 3, Scholl sent the text message to the detective sometime after he began his CCAP search.

¶26 In short, under the facts of this case, the canine sniff was constitutional because Scholl, "[b]eyond determining whether to issue a traffic ticket," was simultaneously conducting other "ordinary inquiries incident to [the traffic] stop"—i.e., waiting for records information—and conducting the canine sniff. *See* ***Rodriguez***, 575 U.S. at 355 (second alteration in original; citation omitted); ***Smith***, 379 Wis. 2d 86, ¶10 n.9; ***Brown***, 392 Wis. 2d 454, ¶18.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.